SHANNA M. KAMINSKI (P74013)
*Admitted Pro Hac Vice*
KAMINSKI LAW, PLLC
PO Box 247
Grass Lake, Michigan 49240-0247
Telephone: (247) 462-7111
skaminski@kaminskilawpllc.com

Attorneys for Plaintiff
DLP FUNDING LLC

[Captioned Continued on Next page]

**UNITED STATES BANKRUPTCY COURT**

**EASTERN DISTRICT OF CALIFORNIA**

**FRESNO DIVISION**

| | |
|---|---|
| In re:<br><br>HRONIS, INC., a California corporation, et al.,<br><br>Debtors-in-Possession. | Case No. 1:26-bk-10978<br>(Jointly Administered)<br><br>Chapter 11<br><br>Adv. Proc. No.: |
| DLP FUNDING LLC, a New York limited liability company;<br><br>Plaintiff,<br><br>v.<br><br>HRONIS, INC., a California corporation;<br>HRONIS FRUIT COMPANY LLC, a California limited liability company;<br>HRONIS RANCH, LLC, a California limited liability company;<br>HRONIS CITRUS, LLC, a California limited liability company; and<br>DOES 1 through 20, inclusive,<br><br>Defendants. | **COMPLAINT TO DETERMINE INTEREST IN PROPERTY OF PRE-PETITION ACCOUNTS AND RELATED RELIEF** |

Continuation of Caption:

GREGORY M. SALVATO (SBN 126285)
Gsalvato@salvatoboufadel.com
JOSEPH BOUFADEL (SBN 267312)
Jboufadel@salvatoboufadel.com
SALVATO BOUFADEL LLP
355 South Grand Avenue, Suite 2450
Los Angeles, California 90071
Telephone: (213) 423-0931

Local Counsel for Plaintiff
DLP FUNDING LLC

Plaintiff DLP Funding LLC ("**DLP**" or "**Plaintiff**"), by and through its undersigned counsel, for its Complaint to Determine Interest in Property and Related Relief complains and alleges as follows:

## PRELIMINARY STATEMENT

1. This action seeks a determination that certain pre-petition accounts receivable, specifically those that are being held by account debtors pursuant to notices sent pursuant to UCC §§ 9-406 and 9-607 are not property of the bankruptcy estate because the Debtors retained no legal or equitable interest in them when the Debtors sold, assigned, and transferred them to DLP pre-petition. This determination (i.e. are the accounts receivable being held) is the first determination that must be made by the Court before any other determination may be made because, if the accounts receivable are not property of the estate as DLP contends, the Court will not have subject matter jurisdiction over them.

## PARTIES

2. Plaintiff DLP Funding LLC is a New York limited liability company with its principal place of business located in New York, New York.

3. Defendants and Debtors HRONIS, INC., a California corporation; HRONIS FRUIT COMPANY LLC, a California limited liability company; HRONIS RANCH, LLC, a California limited liability company; and HRONIS CITRUS, LLC, a California limited liability company (collectively, the "**Debtors**") are debtors and debtors-in-possession in the underlying jointly administered chapter 11 bankruptcy cases entitled, *In re Hronis, Inc., a California corporation, et al.,* Case No. 26-10978, jointly administered with Case Nos. 1:26-bk-10979, 1:26-bk-10980, 1:26-bk-10981, 1:26-bk-10982, 1:26-bk-10983, 1:26-bk-10984, 1:26-bk-10986, 1:26-bk-10987, and 1:26-bk-10988. The Debtors' address as provided in the Purchase Agreement is 10443 Hronis Road Delano, California 93215.

4. The true names and capacities, whether individual, corporate, associate or otherwise of Defendant DOES 1 through 20, inclusive, are unknown to Plaintiff who, therefore, sue said Defendants, and each of them, by such fictitious names. Plaintiff is informed and believes and thereon alleges that each of the Defendants designated herein as a fictitiously named Defendant is, in some manner, responsible for the events and happenings herein referred to, either contractually or tortiously, and caused the damage to the Plaintiff as herein alleged, and Plaintiff will amend this Complaint to allege such true names and capacities when same are ascertained.

5. Plaintiff is informed and believes and thereon alleges that at all times herein mentioned, each Defendant was the officer, agent, employee or representative of, or acted in conjunction with, each remaining Defendant and acted within the course and scope of said agency and with the consent, approval, encouragement, and ratification of co-Defendants. Therefore, each Defendant is jointly and severally responsible for the losses suffered by Plaintiff as alleged herein.

## **JURISDICTION AND VENUE**

6. The United States Bankruptcy Court has jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. § 1334. This Bankruptcy Court has personal jurisdiction over the Defendants.

7. This proceeding is brought pursuant to Bankruptcy Code § 541 and Federal Rules of Bankruptcy Procedure (FRBP) Rule 7001(b), among others. Specifically, this is a proceeding to determine an interest in property which is a cause of action recognized by the Bankruptcy Code and must be brought as an adversary proceeding pursuant to FRBP 7001(b). This is a core proceeding under 28 U.S.C. §§ 157(a) and 157(b)(1).

8. As this is a core proceeding, DLP consents to entry of a final order or judgment in this case.

9. Venue is proper under 28 U.S.C. § 1409 in that this Adversary Proceeding arises in and relates to the Debtors' jointly administered chapter 11 bankruptcy cases pending before the United States Bankruptcy Court for the Eastern District of California.

## FACTUAL BACKGROUND

10. Pre-petition, the Debtor and DLP entered into an agreement under which DLP agreed to purchase up to $19,507,676.79 from the Debtors in installments (the "**Purchase Agreement**"). Ultimately, the Debtors sold, assigned, and transferred to DLP accounts receivable totaling $3,644,482.52 (i.e. two installments were made under the Purchase Agreement). A true and correct copy of the Purchase Agreement is attached hereto as **Exhibit 1**.

11. As the transaction was a sale of accounts receivable, it automatically fell within Article 9 of the Uniform Commercial Code and DLP automatically obtained a security interest in the accounts receivable it purchased from the Debtors that perfected on attachment pursuant to UCC § 9-309.

12. The Debtors also expressly granted a security interest in all accounts receivable and the proceeds thereof in connection with the transaction. (Exhibit 1: Purchase Agreement at p. 8).

13. On November 25, 2025, DLP filed a UCC-1 Financing Statement with the California Secretary of State's Office expressly identifying the transaction as a sale and that DLP has a security interest in accounts receivable. A true and correct copy of the UCC-1 Financing Statement filed on November 25, 2025, is attached hereto as **Exhibit 2**.

14. Under the Purchase Agreement, the Debtors agreed to remit the accounts receivable purchased by DLP in the amount and manner indicated therein. Specifically, as long as the Debtors have collected accounts receivable, the Debtors were to deposit them into the bank account designated in the Purchase Agreement, which account was an account at JP Morgan Chase Bank that was meant to be a trust account, and then DLP would ACH debit 19.25% of accounts receivable deposited into the account daily.

15. The Debtors immediately defaulted under the Purchase Agreement because the ACH debits from the designated account were returned because the Debtors instructed the bank to not honor the ACH debits even though the Debtors were continuing to operate and collecting accounts receivable. In fact, the Debtors did not make a single remittance

under the Purchase Agreement to DLP. Once an event of default occurred under the Purchase Agreement, DLP had the right to collect 100% of accounts receivable, not solely 19.25%, until the total amount of uncollected accounts receivable purchased by DLP were collected by DLP.

16. On December 18, 2025, DLP initiated an action for breach of the Purchase Agreement in the Supreme Court for the State of New York for the County of Kings against the Debtor because, again, the Debtors were not remitting the accounts receivable purchased by DLP in the amount and manner provided for under the Purchase Agreement (the "**New York Action**").

17. On December 22, 2025, DLP and the Debtors executed a Stipulation of Settlement of the New York Action, in which the Debtors expressly stipulated that it sold accounts receivable to DLP and released, among other things, all controversies between it and DLP, which included all controversies related to the nature of the transaction. A true and correct copy of the Stipulation of Settlement is attached hereto as **Exhibit 3**.

18. Under the Stipulation of Settlement, the Debtors were required to pay a lump sum of $3,325,000 to DLP by a date certain to resolve the New York Action and if the Debtors did not comply, DLP was entitled to immediate entry of judgment against them in the amount of $4,935,950.96 plus prejudgment interest, costs and disbursements.

19. When the Debtors did not pay the $3,325,000 as required, DLP first sought to enforce its security interest in accounts receivable by sending notices pursuant to UCC§§ 9-406 and 9-607 to known account debtors of the Debtors in an effort to collect the accounts receivable it purchased under the Purchase Agreement. Those account debtors include, but are not limited to, Aldi, Inc., Costco Wholesale Corporation, Del Monte Foods, Inc. and Walmart, Inc.

20. DLP also sought and obtained a judgment against the Debtor in the New York Action on January 5, 2026. A true and correct copy of the judgment is attached hereto as **Exhibit 4**.

21. On March 6, 2026 ("**Petition Date**"), the Debtors filed their voluntary

petitions for relief under chapter 11 of the United States Bankruptcy Code in this Court.

22. On the Petition Date, account debtors were holding payment of amounts due to the Debtors (i.e. accounts receivable) pursuant to the pre-petition notices sent pursuant to UCC § §9-406 and 9-607 by DLP. There is presently an active dispute as to whether the accounts receivable being held by the account debtors pursuant to the pre-petition notices should be paid to DLP because they are accounts receivable that were purchased by DLP pre-petition under the Purchase Agreement that the Debtors retained no legal or equitable interest in or if such payments from the account debtors are, despite the Debtors having sold them to DLP pre-petition, nevertheless property of the bankruptcy estate.

23. On March 12, 2026, DLP's counsel sent limited releases to all account debtors that received notices pursuant to UCC §§ 9-406 and 9-607 pre-petition, which instructed the account debtors to pay any amounts that become due and owing to the Debtors after the Petition Date to the Debtors, but that the status quo should continue being maintained as to any funds being held prior to the Petition Date.

24. Through this action, DLP seeks a judgment that the accounts receivable being held are not property of the bankruptcy estate and an order directing the account debtors to make payment to DLP rather than the Debtors in the amount of at least $3,430.047.06, which amount reflects the uncollected amount of accounts receivable that were sold to DLP by the Debtors.

## CLAIM FOR RELIEF

### Determination That Accounts Receivable Held Pursuant to UCC § 9-406 Notice Sent Pre-Petition Are Not Property of the Bankruptcy Estate

### (Against all Defendants)

25. DLP repeats and realleges each and every of the foregoing allegations and incorporates the same by this reference as though set forth here in full.

26. Under the Purchase Agreement, the Debtors sold a total of accounts receivable to DLP. As of the Petition Date, a total of $3,430.047.06 of accounts receivable purchased by DLP under the Purchase Agreement had not been remitted to

DLP.

27. The accounts receivable, up to $3,430.047.06, that are being held by account debtors pursuant to UCC § 9-406 notices sent to them pre-petition by DLP were sold, assigned, and transferred to DLP under the Purchase Agreement.

28. The transaction between the Debtors and DLP reflected in the Purchase Agreement is a true sale of accounts receivable, and, as such, the Debtors retained no legal or equitable interest in the accounts receivable it sold to DLP under the Purchase Agreement. *See, e.g.,* UCC § 9-318(a) ("A debtor that has sold an account…does not retain a legal or equitable interest in the collateral sold."); *In re R&J Pizza Corp*., 2014 Bankr. LEXIS 5461 (Oct. 14, 2014) (engaging in true sale analysis of transaction similar to the transaction between DLP and Debtors); *S & H Packing & Sales Co. v. Tanimura Distrib*., 883 F.3d 797, 804 (9th Cir. 2018) (adopting true sale test). The Stipulation of Settlement does not alter this result or the nature of the transaction.

29. The following factors, among other factors, demonstrate that the Debtors retained no legal or equitable interest in the accounts receivable it sold to DLP because the transaction between DLP and the Debtors is a true sale:

29.1. The language in the Purchase Agreement consistently refers to the transaction as a purchase and sale.

29.2. DLP has no recourse if Debtors go out of business, experience a slowdown in business, or a delay in collecting accounts receivable. Such circumstances are not events of default under the Agreement. In other words, all the risk of non-collection was on DLP.

29.3. The Debtors have no right to repurchase the accounts receivable sold to DLP under the Purchase Agreement.

29.4. The accounts receivable were deposited into a designated account that was to operate as a trust account and the Debtors were merely a fiduciary for DLP for collection purposes.

30. As the Debtors retained no legal or equitable interest in the accounts receivable sold, assigned, and transferred to DLP because the transaction was a true sale of accounts receivable as demonstrated by the above, the Receipts are not property of the estate.

31. DLP has suffered an actual, concrete and particularized injury due to the Debtors' failure to remit the accounts receivable it purchased from it.

32. DLP's injury is fairly traceable to the Debtors' actions because DLP would not have suffered the injury had the Debtors not failed and refused to remit the accounts receivable DLP purchased in the amount and manner provided for under the Purchase Agreement.

33. DLP's injury is redressable by a favorable decision finding that the accounts receivable the Debtors sold, assigned, and transferred to DLP pre-petition are not property of the bankruptcy estate.

## PRAYER FOR RELIEF

**WHEREFORE**, DLP prays for relief and judgment against the Debtors, as follows:

1. Determining and declaring that the accounts receivable being held pursuant to pre-petition notices pursuant to UCC §§ 9-406 and 9-607 sent by DLP to account debtors are not property of the bankruptcy estate;

2. Awarding $3,430.047.06 of the funds being held by account debtors pursuant to pre-petition notices pursuant to UCC §§9-406 and 9-607 to DLP;

3. Awarding DLP's reasonable attorney's fees and costs of suit as may be allowed by law, contract, or statute; and

4. For such other and further relief as the Court may deem proper and just.

//

//

//

//

Date: April 21, 2026

KAMINSKI LAW, PLLC

By: ______________________________
Shanna M. Kaminski
*Admitted pro hac vice*

Attorneys for DLP FUNDING LLC

-and-

SALVATO BOUFADEL LLP

By: */s/ Joseph Boufadel*
Joseph Boufadel
Gregory M. Salvato

Local Counsel for DLP FUNDING LLC