# EXHIBIT 1

EXHIBIT 1

# OFFER SUMMARY – REVENUE BASED FINANCING

| | | |
|---|---|---|
| **Funding Provided** | $13,453,570.20 | This is how much funding DLP FUNDING LLC will provide. Due to deductions or payments to others, the total funds that will be provided to you directly is $12,780,891.69.<br><br>For more information on what amounts will be deducted, please review the attached document "Itemization of Amount Financed." |
| **Estimated Annual Percentage Rate (APR)** | 214.88% | APR is the estimated cost of your financing expressed as a yearly rate. APR incorporates the amount and timing of the funding you receive, fees you pay, and the periodic payments you make. This calculation assumes your estimated average monthly income through sales of goods and services will be $20,955,667.00. Since your actual income may vary from our estimate, your effective APR may also vary.<br><br>APR is not an interest rate. The cost of this financing is based upon fees charged by DLP FUNDING LLC rather than interest that accrues over time. |
| **Finance Charge** | $6,117,137.25 | This is the dollar cost of your financing.<br><br>Your finance charge will not increase if you take longer to pay off what you owe. |
| **Estimated Total Payment Amount** | $19,507,676.79 | This is the total dollar amount of payments we estimate you will make under the contract. |
| **Estimated Monthly Cost** | $4,016,286.54 | Although you do not make payments on a monthly basis, this is our calculation of your average monthly cost based upon the payment amounts disclosed below. |
| **Estimated Payment** | **$191,251.74 per day** | |
| **Payment Terms** | We based your present daily payment of $191,251.74 upon our estimate of 19.25% of your total income, based upon average monthly income of $20,955,667.00 for the last 4 month. Since we cannot predict the exact dollar amount of sales revenue your business will collect in the future, your payment is "estimated"<br>How you can change the payment amount. You have the right to obtain a lower payment amount if your sales revenue decreases. For more details on your right to change the payment amount, see Section 1.4 of your contract.<br><br>How we collect your payments. We will debit your business bank account. | |
| **Estimated Term** | 152 Calendar Days | Based on assumptions we made about your income, this is our estimate of how long it will take to collect amounts due to us under your contract. |
| **Prepayment** | If you pay off the financing faster than required, you still must pay all or a portion | |

| | |
|---|---|
| | of the finance charge, up to $6,054,106.59 based upon our estimates. |
| | If you pay off the financing faster than required, you will not be required to pay additional fees. |

**Applicable law requires this information to be provided to you to help you make an informed decision. By signing below, you are confirming that you received this information.**

PETE HRONIS 11/14/2025

Recipient Signature Date

| ITEMIZATION OF AMOUNT FINANCED | |
|---|---|
| 1. Amount Given Directly to You | $12,780,891.69 |
| 2. Amount paid on your behalf to third parties (Sum of below) | $0.00 |
| 3. Amount Paid on Your Account with Us. | $0.00 |
| 4. Amount Provided to You or on Your Behalf (1 + 2 + 3+5) | $13,453,570.20 |
| 5. Prepaid finance Charges: Underwriting Fee & Origination Fee. | $672,678.51 |
| 6. Amount Financed (4 minus 5) | $12,780,891.69 |

DLP FUNDING

DLP FUNDING LLC, 447 Broadway 2nd floor, Unit 805, New York, NY 10013, 877-378-0484



# MERCHANT AND SECURITY AGREEMENT

This Merchant and Security Agreement (hereinafter referred to as the "Agreement") is made as of 11/14/2025 between DLP FUNDING LLC ("DLP FUNDING") and the merchant listed below (the "Merchant").

**MERCHANT INFORMATION**

Merchant's Legal Name: HRONIS FRUIT COMPANY AND ENTITIES APPEARING ON EXHIBIT "B"

D/B/A: HRONIS FRUIT COMPANY State of Incorporation / Organization: CA

Type of entity: Limited Liability Company

Business Address: 10443 Hronis Road City: Delano State: CA Zip: 93215-9556

Mailing Address: 10443 Hronis Road City: Delano State: CA Zip: 93215-9556

Merchant Email: pete.hronis@hronis.net Merchant Phone: [redacted]

| Average Monthly Revenue | Purchase Price: | Purchased Amount: | Purchased Percent: |
|---|---|---|---|
| $20,955,667.00 | $13,453,570.20 | $19,507,676.79 | 19.25% |

**Payment Frequency: Daily Remittance: $191,251.74**

## PURCHASE AND SALE OF FUTURE RECEIVABLES

Merchant hereby sells, assigns and transfers to DLP FUNDING (making DLP FUNDING the absolute owner) in consideration of the "Purchase Price" specified above, the Purchased Percentage of all of Merchant's Future Receipts, contract rights and other entitlements arising from or relating to the payment of monies from Merchant's customers' and/or other third party payors (the "Future Receipts" defined as all payments made by cash, check, electronic transfer or other form of monetary payment deposited into Merchants Account(s)), for the payments to Merchant as a result of Merchant's sale of goods and/or services (the "Transactions") until the "Purchased Amount" has been delivered by or on behalf of Merchant to DLP FUNDING.

Merchant is selling a portion of a future revenue stream to DLP FUNDING at a discount, not borrowing money from DLP FUNDING, therefore there is no interest rate or payment schedule and no time period during which the Purchased Amount must be collected by DLP FUNDING.

The Remittance is a good faith estimate of Purchased Percentage multiplied by revenues of Merchant. Merchant going bankrupt or going out of business, or experiencing a slowdown in business, or a delay in collecting its receivables, in and of itself, does not constitute a breach of this Agreement.

DLP FUNDING is entering this Agreement knowing the risks that Merchant's business may slow down or fail, and DLP FUNDING assumes these risks based on Merchant's representations, warranties and covenants in this Agreement, which are designed to give DLP FUNDING a reasonable and fair opportunity to receive the benefit of its bargain. Merchant and Guarantor are only guaranteeing their performance of the terms of this Merchant and Security Agreement and are not guaranteeing the payment of the Purchased Amount. The initial Remittance shall be as described above. The Remittance is subject to adjustment as set forth in Paragraph 1.4 and Paragraph 1.5. DLP FUNDING will debit the Remittance each business day from only one depositing bank account, which account must be acceptable to and pre-approved by DLP FUNDING (the "Account"), into which Merchant and/or Merchant's customers shall remit the Future Receipts from each Transaction, until such time as DLP FUNDING receives payment in full of the Purchased Amount. Merchant hereby authorizes DLP FUNDING to ACH debit the initial Remittance from the Account on the agreed upon Payment Frequency. A daily basis means any day that is not a United States banking holiday. DLP FUNDING payment of the Purchase Price shall be deemed the acceptance and performance by DLP FUNDING of this Agreement. Merchant understands that it is responsible for ensuring that the initial Remittance to be debited by DLP FUNDING remains in the Account and will be held responsible for any fees incurred by DLP FUNDING resulting from a rejected ACH attempt or an Event of Default. DLP FUNDING is not responsible for any overdrafts or rejected transactions that may result from DLP FUNDING ACH debiting the agreed Remittance under the terms of this Agreement. Notwithstanding anything to the contrary in this Agreement or any other agreement between DLP FUNDING and Merchant, upon the occurrence of an Event of Default of the Merchant Agreement the Purchased Percentage shall equal 100%. A list of all fees applicable under this Agreement is contained in Appendix A and is incorporated by reference into this Agreement.

**THE MERCHANT AGREEMENT "TERMS AND CONDITIONS" AND THE "SECURITY AGREEMENT AND GUARANTY" HEREOF, ARE ALL HEREBY INCORPORATED IN AND MADE A PART OF THIS MERCHANT AGREEMENT.**

| | | | |
|---|---|---|---|
| **FOR THE MERCHANT(#1)** | By: | PETER JOHN HRONIS, Owner<br>(Print Name and Title) | PETE HRONIS<br>(Signature) |
| **FOR THE MERCHANT(#2)** | By: | KOSTA JAMES HRONIS, Owner<br>(Print Name and Title) | Kosta James Hronis<br>(Signature) |
| **BY OWNER (#1)** | By: | PETER JOHN HRONIS, Owner<br>(Print Name and Title) | PETE HRONIS<br>(Signature) |
| **BY OWNER (#2)** | By: | KOSTA JAMES HRONIS, Owner<br>(Print Name and Title) | Kosta James Hronis<br>(Signature) |

**ADDITIONAL TERMS AND CONDITIONS OF MERCHANT AGREEMENT**

**TERMS OF ENROLLMENT IN PROGRAM**

**I.1** **Merchant Deposit Agreement and Processor.** Merchant shall: (A) execute an agreement acceptable to DLP FUNDING with a Bank acceptable to DLP FUNDING to obtain electronic fund transfer services for the Account, and (B) if applicable, execute an agreement acceptable to DLP FUNDING with a credit and debit card processor (the "Processor") instructing the Processor to deposit all Future Receipts into the Account. Merchant shall provide DLP FUNDING and/or its authorized agent(s) with all of the information, authorizations and passwords necessary for verifying Merchant's receivables, receipts, deposits and withdrawals into and from the Account. Merchant hereby authorizes DLP FUNDING and/or its agent(s) to withdraw from the Account via ACH debit the amounts owed to DLP FUNDING for the receipts as specified herein and to pay such amounts to DLP FUNDING. These authorizations apply not only to the approved Account but also to any subsequent or alternate account used by the Merchant for these deposits, whether pre-approved by DLP FUNDING or not. This additional authorization is not a waiver of DLP FUNDING's entitlement to declare this Agreement breached by Merchant as a result of its usage of an account which DLP FUNDING did not first pre-approve in writing prior to Merchant's usage thereof. The aforementioned authorizations shall be irrevocable without the written consent of DLP FUNDING. Failure to supply the above-mentioned passwords, log-in, and/or information to verify Merchant's receivables, receipts, deposits and withdrawals into and from the Account shall constitute a breach of this Agreement.

**I.2** **Term of Agreement. This Agreement has no term.** This Agreement shall remain in full force and effect until the entire Purchased Amount and any other amounts due are received by DLP FUNDING as per the conditions of this Agreement. The above-described "Payment Frequency" is solely upon estimation based upon Merchant's representations.

**I.3** **Future Purchase of Increments**. Subject to the terms of this Agreement, DLP FUNDING offers to purchase additional Receipts in the "Increments" stated in on the addendum of this Agreement, if any. DLP FUNDING reserves the right to delay or rescind the offer to purchase any Increment or any additional Receipts, in its sole and absolute discretion.

**I.4** **Reconciliation.** The Remittance is intended by Seller to represent the Purchased Percentage of Seller's Average Monthly Revenue. As long as an Event of Default, or breach of this Agreement, has not occurred, Merchant may request a retroactive reconciliation of the Remittance amount (for the purposes of this paragraph "Remittance Amount" shall be defined as all payments made by Merchant to DLP FUNDING after DLP FUNDING remitted the Purchase Price to Merchant). All requests hereunder must be in writing to Menucha@dlpfunding.com. Said request must include copies of all of Merchant's bank account statements, credit card processing statements, and accounts receivable reports, for the requested month and the preceding month. DLP FUNDING retains the right to request additional documentation such as additional bank login or DecisionLogic access to view Merchant's accounts. It is the sole responsibility of Merchant to send the complete bank statements and written request for a reconciliation to DLP FUNDING. Merchant's failure to timely send the written reconciliation request, with all required information, shall constitute Merchant's waiver of any right to the reconciliation of the Future Receipts during the preceding calendar month. Such reconciliation, if applicable and after reasonable verification by DLP FUNDING, must be performed by DLP FUNDING within five (5) Business Days following its receipt of Merchant's request and receipt of requested documentation by DLP FUNDING, for reconciliation by either crediting or debiting the difference back to, or from, Merchants Bank Account so that the total amount debited by DLP FUNDING shall equal the Purchased Percentage of the Future Receipts that Merchant collected from the date of this Agreement up to and including the date of the reconciliation request. Nothing set forth in this section shall be deemed to provide Merchant with the right to interfere with DLP FUNDING's right and ability to debit Merchant's Account while the Request is pending or to unilaterally modify the initial Remittance amount, in any method other than the ones listed in this Agreement. MERCHANT RECOGNIZES AND AGREES THAT IT IS ITS SOLE RESPONSIBILITY TO MAKE A RECONCILIATION REQUEST, AND THAT, IN THE EVENT THAT MERCHANT FAILS TO MAKE A RECONCILIATION REQUEST AS SET FORTH IN THIS SECTION, MERCHANT WAIVES ANY ARGUMENT THAT THE REMITTANCE EXCEEDED THE PURCHASED PERCENTAGE OF MERCHANT'S AVERAGE MONTHLY REVENUE FOR THAT PERIOD.

**I.5** **DLP FUNDING May Request Changes to the Remittance**. After 30-days following a reconciliation requested by the Merchant, DLP FUNDING may require Merchant to provide information, including bank statements, to evaluate whether the Remittance should again be adjusted to more closely reflect the Merchant's actual Future Receipts times the Purchased Percentage. Failure to provide such information within five (5) business days will be a breach of this agreement.

**I.6** **Financial Condition.** Merchant and Guarantor(s) (as defined) authorize DLP FUNDING and its agents to investigate their financial responsibility and history, and will provide to DLP FUNDING any authorizations, bank and/or financial statements, tax returns, etc., as DLP FUNDING deems necessary in its sole and absolute discretion prior to or at any time after execution of this Agreement. This Agreement will be deemed as acceptable as an authorization for release of financial and credit information. DLP FUNDING is authorized to update such information and financial and credit profiles from time to time as it deems appropriate and Merchant and Guarantor(s) are required to provide requested financial information within five (5) days from such request.

**I.7** **Transactional History.** Merchant authorizes all of its banks, brokers and processors to provide DLP FUNDING with Merchant's banking, brokerage and/or processing history to determine qualification or continuation. Merchant shall provide DLP FUNDING with copies of any documents related to Merchant's card processing activity or financial and banking affairs within five (5) days after a request from DLP FUNDING. Merchant's failure to comply with any such document request shall be deemed a default under this Agreement.

**I.8** **Indemnification.** Merchant and Guarantor(s) jointly and severally indemnify and hold harmless Processor, its officers, directors and shareholders against all losses, damages, claims, liabilities and expenses (including reasonable attorney's fees) incurred by Processor resulting from (a) claims asserted by DLP FUNDING for monies owed to DLP FUNDING from Merchant and (b) actions taken by Processor in reliance upon any fraudulent, misleading or deceptive information or instructions provided by DLP FUNDING.

**I.9** **No Liability.** In no event will DLP FUNDING be liable for any claims asserted by Merchant or Guarantor(s) under any legal theory for lost profits, lost revenues, lost business opportunities, exemplary, punitive, special, incidental, indirect or consequential damages, each of which is waived by both Merchant and Guarantor(s) having occurred in Merchant's regular course of business

**I.10** **Reliance on Terms.** Section 1.01, 1.06, 1.07, 1.08 and 2.04 of this Agreement are agreed to for the benefit of Merchant, DLP FUNDING, Processor, and Merchant's bank and notwithstanding the fact that Processor and the bank is not a party of this Agreement, Processor and the bank may rely upon their terms and raise them as a defense in any action.

**I.11** **Sale of Receipts.** Merchant and DLP FUNDING agree that the Purchase Price under this Agreement is in exchange for the Purchased Amount, and that such Purchase Price is not intended to be, nor shall it be construed as, a loan from DLP FUNDING to Merchant. Merchant agrees that the Purchase Price is in

DLP FUNDING LLC, 447 Broadway 2nd floor, Unit 805, New York, NY 10013, 877-378-0484



exchange for the Future Receipts pursuant to this Agreement, and that it equals the fair market value of such Future Receipts. DLP FUNDING has purchased and shall own all the Future Receipts described in this Agreement up to the full Purchased Amount as the Future Receipts are created. Payments made to DLP FUNDING in respect to the full amount of the Future Receipts shall be conditioned upon Merchant's sale of products and services, and the payment therefore by Merchant's customers. DLP FUNDING and Merchant are mutually entering this Agreement with the explicate intent that this agreement does not constitute a loan and does not include any terms which can be interpreted as a loan and/or containing interest at any rate. DLP FUNDING explicitly asserts that DLP FUNDING does not have any usurious intent as this Agreement is a Merchant Cash Advance, and not a loan. Merchant acknowledges that no such usurious intent is present.

**I.12** **Power of Attorney.** For the pendency of this Agreement, which has no set term, Merchant appoints DLP FUNDING as its agent and attorney-in-fact with full authority to take any action or execute any instrument or document to settle all obligations due to DLP FUNDING from Processor, or in the case of a violation by Merchant of Section 1 or the occurrence of an Event of Default under Section 3 hereof, including without limitation (i) to obtain and adjust insurance; (ii) to collect monies due or to become due under or in respect of any of the collateral; (iii) to receive, endorse and collect any checks, notes, drafts, instruments, documents or chattel paper in connection with clause (i) or clause (ii) above; (iv) to sign Merchant's name on any invoice, bill of lading, or assignment directing customers or account debtors to make payment directly to DLP FUNDING; and (v) to contact Merchant's banks and financial institutions using Merchant and Guarantor(s) personal information to verify the existence of an account and obtain account balances; (vi) to file any claims or take any action or institute any proceeding which DLP FUNDING may deem necessary for the collection of any of the unpaid Purchased Amount from the collateral, or otherwise to enforce its rights with respect to payment of the Purchased Amount. In connection therewith, all costs, expenses and fees, including legal fees, shall be payable by Merchant.

**I.13** **Protections Against Default.** The following Protections 1 through 5 may be invoked by DLP FUNDING immediately and without notice to Merchant in the event: (a) Merchant takes any action to discourage the use of electronic check processing that are settled through Processor, or permits any event to occur that could have an adverse effect on the use, acceptance, or authorization of checks or other payments or deposits for the purchase of Merchant's services and products including but not limited to direct deposit of any checks into a bank account without scanning into the DLP FUNDING electronic check processor; (b) Merchant changes its arrangements with Processor or the Bank in any manner that is adverse to DLP FUNDING; (c) Merchant changes the electronic check processor through which the Future Receipts are settled from Processor to another electronic check processor, or permits any event to occur that could cause diversion of any of Merchant's check or deposit transactions to another processor; (d) Merchant intentionally interrupts the operation of this business transfers, moves, sells, disposes, or otherwise conveys its business and/or assets without (i) the express prior written consent of DLP FUNDING, and (ii) the written agreement of any DLP FUNDING or transferee to the assumption of all of Merchant's obligations under this Agreement pursuant to documentation satisfactory to DLP FUNDING; (e) Merchant takes any action, fails to take any action, or offers any incentive—economic or otherwise—the result of which will be to induce any customer or customers to pay for Merchant's services with any means other than payments, checks or deposits that are settled through Processor; (f) Merchant fails to provide DLP FUNDING with copies of any documents related to Merchant's card processing activity of financial and banking affairs within five (5) days after a request from DLP FUNDING, or; (g) Merchant breaches any terms of this Agreement, including but not limited to any of the Events of Default contained in Section 3.1 herein. **These protections are in addition to any other remedies available to DLP FUNDING at law, in equity or otherwise pursuant to this Agreement.**

**Protection 1.** The full Purchased Amount, less any amount already remitted, plus all fees (including reasonable attorney fees) due under this Agreement and the attached Security Agreement become payable upon Merchant's breach.

**Protection 2.** DLP FUNDING may enforce the provisions of the Limited Personal Guaranty of Performance against the Guarantor(s).

**Protection 3.** DLP FUNDING may enforce its security interest in the collateral.

**Protection 4.** DLP FUNDING may proceed to protect and enforce its right and remedies by lawsuit. In any such lawsuit, if DLP FUNDING recovers a Judgment against Merchant, Merchant shall be liable for all of DLP FUNDING's costs of the lawsuit, including but not limited to all reasonable attorney fees, court costs, and prejudgment interest from the date of default at the rate of 16% per annum.

**Protection 5.** DLP FUNDING may debit Merchant's depository accounts wherever situated by means of ACH debit or facsimile signature on a computer-generated check drawn on Merchant's bank account or otherwise for all sums due to DLP FUNDING.

**I.14** **Protection of Information.** Merchant and each person signing this Agreement on behalf of Merchant and/or as Owner or Guarantor, in respect of himself or herself personally, authorizes DLP FUNDING to disclose information concerning Merchant's and each Owner's and each Guarantor's credit standing (including credit bureau reports that DLP FUNDING obtains) and business conduct only to agents, affiliates, subsidiaries, and credit reporting bureaus. Merchant and each Owner and each Guarantor hereby and each waives to the maximum extent permitted by law any claim for damages against DLP FUNDING or any of its affiliates relating to any (i) investigation undertaken by or on behalf of DLP FUNDING as permitted by this Agreement or (ii) disclosure of information as permitted by this Agreement.

**I.15** **Confidentiality.** Merchant understands and agrees that the terms and conditions of the products and services offered by DLP FUNDING, including this Agreement and any other DLP FUNDING documents (collectively, "Confidential Information") are proprietary and confidential information of DLP FUNDING. Accordingly, unless disclosure is required by law or court order, Merchant shall not disclose Confidential Information of DLP FUNDING to any person other than an attorney, accountant, financial advisor or employee of Merchant who needs to know such information for the purpose of advising Merchant ("Advisor"), provided such Advisor uses such information solely for the purpose of advising Merchant and first agrees in writing to be bound by the terms of this section. A breach hereof entitles DLP FUNDING to not only damages and reasonable attorney's fees but also to both a Temporary Restraining Order and a Preliminary Injunction without a Bond or Security.

**I.16** **Publicity.** Merchant and each of Merchant's Owner(s) and all Guarantor(s) hereto all hereby authorizes DLP FUNDING to use its, his or her name in listings of clients and in advertising and marketing materials.

**I.17** **D/B/A's.** Merchant hereby acknowledges and agrees that DLP FUNDING may be using "doing business as" or "d/b/a" names in connection with various matters relating to the transaction between DLP FUNDING and Merchant, including the filing of UCC-1 financing statements and other notices or filings.

**I.18** **Sharing of Information.** Merchant hereby authorizes DLP FUNDING to share information regarding Merchant's performance under this Agreement with third parties.

**I.19** **Electronic Transactions Authorization.** The parties agree that all business between one another shall be conducted by electronic means and adopt the provisions of the New York Electronic Signatures and Records Act ("ESRA") as set forth in N.Y. STT. Law. Section 301 through §309 inclusive. Each document that is subject to or provided in furtherance of this Agreement, all documents provided in furtherance thereof, as amended, modified or supplemented from time to time that a party has sent to the other by electronic means or the Merchant has clicked to approve to adopt this Agreement shall be intended as and

constitute an original and deemed to contain a valid signature for all purposes acknowledging and consenting to the terms of the agreement applicable thereto. In furtherance of the above, Merchant hereby authorizes DLP FUNDING to regard the Merchant's printed name or electronic approval for any document, agreement, assignment schedules or invoices as the equivalent of a manual signature by one of Merchant's authorized officers or agents. DLP FUNDING may rely upon, and assume the authenticity of, any such electronic approval, and any material applicable to such approval as the duly confirmed, authorized and approved signature of the Merchant by the person approving same, shall constitute an "authenticated" record for all purposes (including, without limitation, the UCC) and shall satisfy the requirements of any applicable statute of frauds. Merchant is not required to agree to conduct business pursuant to ESRA and the purchase of Future Receipts in furtherance of this Agreement is not conditioned upon Merchant agreeing to conduct business in accordance with the ESRA. Merchant has the option to request paper copies of any electronic records upon written request to DLP FUNDING. Merchant may terminate this Electronic Transactions Authorization by providing DLP FUNDING with not less than ten (10) days written notice in conformity with this Agreement.

**I.20** **Monitoring, Recording, and Solicitations.** Merchant authorizes DLP FUNDING, its affiliates, agents and independent contractors to contact Merchant at any telephone number Merchant provides to DLP FUNDING or from which Merchant places a call to DLP FUNDING, or any telephone number where DLP FUNDING believes it may reach Merchant, using any means of communication, including but not limited to calls or text messages to mobile, cellular, wireless or similar devices or calls or text messages using an automated telephone dialing system and/or artificial voices or prerecorded messages, even if Merchant incurs charges for receiving such communications. Merchant also agrees that DLP FUNDING, its affiliates, agents and independent contractors, may use any other medium not prohibited by law including, but not limited to, mail, e-mail and facsimile, to contact Merchant. Merchant expressly consents to conduct business by electronic means.

## II. REPRESENTATIONS, WARRANTIES AND COVENANTS

Merchant represents, warrants and covenants that, as of this date and during the term of this Agreement:

**II.1** **Financial Condition and Financial Information.** Merchant's and Guarantor(s) bank and financial statements, copies of which have been furnished to DLP FUNDING, and future statements which will be furnished hereafter at the discretion of DLP FUNDING, fairly and accurately represent the financial condition of Merchant at such dates, and since those dates there has been no material adverse changes, financial or otherwise, in such condition, operation or ownership of Merchant. Merchant and Guarantor(s) have a continuing, affirmative obligation to advise DLP FUNDING of any material adverse change in their financial condition, operation or ownership. DLP FUNDING may request statements at any time during the performance of this Agreement and the Merchant and Guarantors shall provide them to DLP FUNDING within five (5) business days after request from DLP FUNDING. Merchant's or Guarantors' failure to do so is a material breach of this Agreement.

**II.2** **Governmental Approvals.** Merchant has, and continues to, represent that Merchant is in compliance and shall comply with all laws and has valid permits, authorizations and licenses to own, operate and lease its properties and to conduct the business in which it is presently engaged and/or will engage in hereafter.

**II.3** **Authorization.** Merchant, and the person(s) signing this Agreement on behalf of Merchant, have full power and authority to incur and perform the obligations under this Agreement, all of which have been duly authorized.

**II.4** **Electronic Check Processing Agreement.** Merchant will not change its Processor, add terminals, change its financial institution or bank account(s) or take any other action that could have any adverse effect upon Merchant's obligations under this Agreement, without DLP FUNDING's prior written consent. Any such changes shall be a material breach of this Agreement.

**II.5** **Change of Name or Location.** Merchant will not conduct Merchant's businesses under any name other than as disclosed to the Processor and DLP FUNDING, nor shall Merchant change any of its places of business without prior written consent by DLP FUNDING. Merchant acknowledges that the changing of their name and or location does not obviate Merchant's obligations under this Agreement.

**II.6** **Daily Batch Out.** If applicable, Merchant will batch out receipts with the Processor on a daily basis.

**II.7** **Estoppel Certificate.** Merchant will at every and all times, and from time to time, upon at least one (1) day's prior notice from DLP FUNDING to Merchant, execute, acknowledge and deliver to DLP FUNDING and/or to any other person, firm or corporation specified by DLP FUNDING, a statement certifying that this Agreement is unmodified and in full force and effect (or, if there have been modifications, that the same is in full force and effect as modified and stating the modifications) and stating the dates which the Purchased Amount or any portion thereof has been repaid.

**II.8** **No Bankruptcy or Pending Litigation.** As of the date of this Agreement, Merchant is not insolvent and does not contemplate filing for bankruptcy in the next six (6) months and has not consulted with a bankruptcy attorney or filed any petition for bankruptcy protection under Title 11 of the United States Code and there has been no involuntary petition brought or pending against Merchant. Merchant further warrants that it does not anticipate filing any such bankruptcy petition and it does not anticipate that an involuntary petition will be filed against it. Merchant warrants that there are no pending lawsuits and/or claims against Merchant.

**II.9** **Unencumbered Receipts.** Merchant has good, complete, unencumbered and marketable title to all Future Receipts, free and clear of any and all liabilities, liens, claims, changes, restrictions, conditions, options, rights, mortgages, security interests, equities, pledges and encumbrances of any kind or nature whatsoever or any other rights or interests that may be inconsistent with the transactions contemplated with, or adverse to the interests of DLP FUNDING.

**II.10** **Business Purpose.** Merchant is a valid business in good standing under the laws of the jurisdictions in which it is organized and/or operates, and Merchant is entering into this Agreement for business purposes and not as a consumer for personal, family or household purposes. Merchant shall conduct its business consistent with past business practice and shall use the Purchase Price consistent with past business practice, whether the funding of such Purchase Price occurs contemporaneous with the execution of this Agreement or anytime time thereafter.

**II.11** **Defaults under Other Contracts.** Merchant represents that Merchant's execution of, and/or performance under this Agreement, will not cause or create an event of default by Merchant under any contract with any other person or entity.

**II.12** **Good Faith.** Merchant and Guarantors hereby affirm that Merchant is receiving the Purchase Price and selling DLP FUNDING the Purchased Amount in good faith and will use the Purchase Price funds to maintain and grow Merchant's business.

**II.13** **No Sale of Future Receivables.** Merchant has not entered into any other agreement for the sale of Future Receipts and/or cash advance agreement except as disclosed to DLP FUNDING in writing, shall not enter into any other Future Receipts and/or cash advance agreement, and has not accepted and shall not accept any other cash advance absent DLP FUNDING's advance written consent.

**II.14** **Authority to Sign.** The person who signed this Agreement on behalf of Seller was authorized by Seller to sign this Agreement on behalf of Seller.

DLP FUNDING LLC, 447 Broadway 2nd floor, Unit 805, New York, NY 10013, 877-378-0484



## I. EVENTS OF DEFAULT AND REMEDIES

I.1 **Events of Default.** The occurrence of any of the following events shall constitute an "Event of Default" hereunder:

(a) Merchant or Guarantor shall violate any term or covenant in this Agreement;
(b) Any representation or warranty by Merchant in this Agreement shall prove to have been incorrect, false or misleading in any material respect when made;
(c) The sending of notice of termination by Merchant or verbally notifying DLP FUNDING of its intent to breach this Agreement;
(d) Merchant fails to supply all requested documentation and allow for daily and/or real time monitoring of its bank account;
(e) Merchant's bank returns a code of NSF three (3) or more consecutive times and Merchant fails to respond to any inquiry by DLP FUNDING;
(f) Merchant shall transfer or sell all or substantially all of its assets;
(g) Merchant shall make or send notice of any intended bulk sale or transfer by Merchant;
(h) Merchant shall use multiple depository accounts without the prior written consent of DLP FUNDING;
(i) Merchant shall enter into any financing agreements with any other party including but not limited to: loans, merchant cash advances, receivables financing, or any other agreement that will increase the total debt owed by Merchant to any other party, without prior written consent of DLP FUNDING;
(j) Merchant shall change its depositing account without the prior written consent of DLP FUNDING;
(k) Merchant shall close its depositing account used for Remittance without the prior written consent of DLP FUNDING;
(l) Merchant's bank returns a code other than NSF preventing DLP FUNDING from the Remittance; or
(m) Merchant shall default under any of the terms, covenants and conditions of any other agreement with DLP FUNDING.

I.2 **Limited Personal Guaranty.** In the Event of a Default, DLP FUNDING will enforce its rights against the Guarantor(s) of this transaction. Said Guarantor(s) will be jointly and severally liable to DLP FUNDING for all of DLP FUNDING's losses and damages, in addition to all costs and expenses and legal fees associated with such enforcement. The Guarantor(s) is only as liable to DLP FUNDING as Merchant is.

I.3 **Remedies.** In case any Event of Default occurs and is not waived pursuant to Section 4.4 hereof, DLP FUNDING may proceed to protect and enforce its rights or remedies by suit in equity or by action at law, or both, whether for the specific performance of any covenant, agreement or other provision contained herein, or to enforce the discharge of Merchant's obligations hereunder or any other legal or equitable right or remedy, and enforcing the Security Agreement contained herein. All rights, powers and remedies of DLP FUNDING in connection with this Agreement may be exercised at any time by DLP FUNDING after the occurrence of an Event of Default, are cumulative and not exclusive, and shall be in addition to any other rights, powers or remedies provided by law or equity.

I.4 **Costs.** Merchant shall pay to DLP FUNDING all reasonable costs associated with (a) an Event or Default; (b) breach by Merchant of the Covenants in this Agreement and the enforcement thereof; and (c) the enforcement of DLP FUNDING's remedies set forth in this Agreement, including but not limited to court costs and attorney fees.

I.5 **Required Notifications.** Merchant is required to give DLP FUNDING written notice within twenty-four (24) hours of any filing under Title 11 of the United States Code. Merchant is required to give DLP FUNDING seven (7) days' written notice prior to the closing of any sale of all or substantially all of the Merchant's assets or stock.

## II. MISCELLANEOUS

II.1 **Modifications; Agreements.** No modification, amendment, waiver or consent of any provision of this Agreement shall be effective unless the same shall be in writing and signed by DLP FUNDING.

II.2 **Assignment.** DLP FUNDING may assign, transfer or sell its rights to receive the Purchased Amount or delegate its duties hereunder, either in whole or in part.

II.3 **Notices.** All notices, requests, consents, demands and other communications hereunder shall be delivered by certified mail, return receipt requested, to the respective parties to this Agreement at the addresses set forth in this Agreement.

II.4 **Waiver Remedies.** No failure on the part of DLP FUNDING to exercise, and no delay in exercising any right under this Agreement shall operate as a waiver thereof, nor shall any single or partial exercise of any right under this Agreement preclude any other or further exercise thereof or the exercise of any other right. The remedies provided hereunder are cumulative and not exclusive of any remedies provided by law or equity.

II.5 **Binding Effect; Governing Law, Venue and Jurisdiction.** This Agreement shall be binding upon and inure to the benefit of Merchant, DLP FUNDING and their respective successors and assigns, except that Merchant shall not have the right to assign its rights hereunder or any interest herein without the prior written consent of DLP FUNDING, which consent may be withheld in DLP FUNDING's sole discretion. DLP FUNDING reserves the rights to assign this Agreement with or without prior written notice to Merchant. This Agreement shall be governed by and construed in accordance with the laws of the state of New York, without regards to any applicable principals of conflicts of law. Any suit, action or proceeding arising hereunder, or the interpretation, performance or breach hereof, shall, if DLP FUNDING so elects, be instituted in any court sitting in New York, (the "Acceptable Forums"). Merchant agrees that the Acceptable Forums are convenient to it and submits to the jurisdiction of the Acceptable Forums and waives any and all objections to jurisdiction or venue. Should such proceeding be initiated in any other forum, Merchant waives any right to oppose any motion or application made by DLP FUNDING to transfer such proceeding to an Acceptable Forum.

II.6 **Service of Process by Mail and/or Email.** Merchant hereby irrevocably waives personal service of any summons, complaint or other process and agrees that the service thereof may be made by email to the email address listed on page one (1) of this Agreement (or any other email address provided by Merchant to DLP FUNDING), or by certified mail, registered mail or by a recognized overnight delivery service (such as FedEx overnight mail or UPS overnight mail) or by First Class mail directed to it at the address listed on page one (1) of this Agreement. Merchant agrees that such service of process shall be deemed served on the day such summons, complaint or other process is placed in a depository under the exclusive custody and control of the United States Postal Service or other mailing service provider such as FedEx or UPS, using one of the methods listed above (such as certified mail, registered mail, First Class mail, or a recognized overnight delivery service, or in the event such service of process is effected via email, on the date such email is sent to Merchant, and that no additional notice or mailings shall be required before a judgment by default is sought or entered. Nothing in this Agreement shall affect the right of any party to this Agreement to serve process in any other manner permitted by law or pursuant to the New York Civil Practice Laws and Rules.

Merchant 1 Initial(s): PH Merchant 2 Initial(s): KJH Guarantor 1 Initial(s): PH Guarantor 2 Initial(s): KJH

II.7 **Survival.** All representations, warranties and covenants herein shall survive the execution and delivery of this Agreement and shall continue in full force until all obligations under this Agreement shall have been satisfied in full and this Agreement shall have terminated.

II.8 **Interpretation.** All Parties hereto have reviewed this Agreement with an attorney of their own choosing and have relied only on their own attorney guidance and advice. No construction determinations shall be made against either Party hereto as drafter.

II.9 **Severability.** In case any of the provisions in this Agreement is found to be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of any other provision contained herein shall not in any way be affected or impaired.

II.10 **Entire Agreement.** Any provision hereof prohibited by law shall be ineffective only to the extent of such prohibition without invalidating the remaining provisions hereof. This Agreement and the Security Agreement and Guaranty hereto embody the entire agreement between Merchant and DLP FUNDING and supersede all prior agreements and understandings relating to the subject matter hereof.

II.11 **JURY TRIAL WAIVER.** THE PARTIES HERETO WAIVE TRIAL BY JURY IN ANY COURT IN ANY SUIT, ACTION OR PROCEEDING ON ANY MATTER ARISING IN CONNECTION WITH OR IN ANY WAY RELATED TO THE TRANSACTIONS OR THE ENFORCEMENT HEREOF. THE PARTIES HERETO ACKNOWLEDGE THAT EACH MAKES THIS WAIVER KNOWINGLY, WILLINGLY AND VOLUNTARILY AND WITHOUT DURESS, AND ONLY AFTER EXTENSIVE CONSIDERATION OF THE RAMIFICATIONS OF THIS WAIVER WITH THEIR ATTORNEYS.

II.12 **CLASS ACTION WAIVER. THE PARTIES HERETO WAIVE ANY RIGHT TO ASSERT ANY CLAIMS AGAINST THE OTHER PARTY AS A REPRESENTATIVE OR MEMBER IN ANY CLASS OR REPRESENTATIVE ACTION, EXCEPT WHERE SUCH WAIVER IS PROHIBITED BY LAW AS AGAINST PUBLIC POLICY. TO THE EXTENT EITHER PARTY IS PERMITTED BY LAW OR COURT OF LAW TO PROCEED WITH A CLASS OR REPRESENTATIVE ACTION AGAINST THE OTHER, THE PARTIES HEREBY AGREE THAT: (a) THE PREVAILING PARTY SHALL NOT BE ENTITLED TO RECOVER ATTORNEYS' FEES OR COSTS ASSOCIATED WITH PURSUING THE CLASS OR REPRESENTATIVE ACTION (NOT WITHSTANDING ANY OTHER PROVISION IN THIS AGREEMENT); AND (b) THE PARTY WHO INITIATES OR PARTICIPATES AS A MEMBER OF THE CLASS WILL NOT SUBMIT A CLAIM OR OTHERWISE PARTICIPATE IN ANY RECOVERY SECURED THROUGH THE CLASS OR REPRESENTATIVE ACTION.**

II.13 **Facsimile & Digital Acceptance.** Facsimile signatures and digital signatures hereon shall be deemed acceptable for all purposes.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

DLP FUNDING LLC, 447 Broadway 2nd floor, Unit 805, New York, NY 10013, 877-378-0484



## SECURITY AGREEMENT AND GUARANTY

Merchant's Legal Name: HRONIS FRUIT COMPANY AND ENTITIES APPEARING ON EXHIBIT "B" Federal Tax ID: 88-3191405

D/B/A: HRONIS FRUIT COMPANY

Business Address: 10443 Hronis Road City: Delano State: CA Zip: 93215-9556

**Additional Guarantor(s):**

ENTITIES APPEARING ON EXHIBIT B

## SECURITY AGREEMENT

**Security Interest**

This Agreement will constitute a security agreement under the Uniform Commercial Code. Merchant and Guarantor(s) grant(s) to DLP FUNDING a security interest in and lien upon all of their present and future: (a) accounts (the "Accounts Collateral"), accounts receivables, chattel paper, documents, equipment, general intangibles, instruments, and inventory, as those terms are each defined in Article 9 of the Uniform Commercial Code (the "UCC"), now or hereafter owned or acquired by Merchant and/or Guarantor(s); (b) all proceeds, as that term is defined in Article 9 of the UCC; (c) funds at any time in the Merchant's and/or Guarantor(s) Account, regardless of the source of such funds; (d) present and future Electronic Check Transactions; and (e) any amount which may be due to DLP FUNDING under this Agreement, including but not limited to all rights to receive any payments or credits under this Agreement (collectively, the "Secured Assets"). The security interest in Account Collateral shall be effective immediately. The Security interest in Secured Assets other than Accounts Collateral shall be effective automatically upon the occurrence of an Event of Default. Merchant agrees to provide other security to DLP FUNDING upon request to secure Merchant's obligations under this Agreement. Merchant agrees that, if at any time there are insufficient funds in Merchant's Account to cover DLP FUNDING's entitlements under this Agreement, DLP FUNDING is granted a further security interest in all of Merchant's assets of any kind whatsoever, and such assets shall then become Secured Assets. These security interests and liens will secure all of DLP FUNDING's entitlements under this Agreement and any other agreements now existing or later entered into between Merchant, DLP FUNDING or an affiliate of DLP FUNDING. DLP FUNDING is authorized to file any and all notices or filings it deems necessary or appropriate to enforce its entitlements hereunder. This security interest may be exercised by DLP FUNDING without notice or demand of any kind by making an immediate withdrawal or freezing the Secured Assets. DLP FUNDING shall have the right to notify account debtors at any time. Pursuant to Article 9 of the UCC, as amended from time to time, DLP FUNDING has control over and may direct the disposition of the Secured Assets, without further consent of Merchant. Merchant hereby represents and warrants that no other person or entity has a security interest in the Secured Assets. With respect to such security interests and liens, DLP FUNDING will have all rights afforded under the UCC, any other applicable law and in equity. Merchant will obtain from DLP FUNDING written consent prior to granting a security interest of any kind in the Secured Assets to a third party. Merchant and Guarantor(s) agree(s) that this is a contract of recoupment and DLP FUNDING is not required to file a motion for relief from a bankruptcy action automatic stay to realize on any of the Secured Assets. Nevertheless, Merchant and Guarantor(s) agree(s) not to contest or object to any motion for relief from the automatic stay filed by DLP FUNDING. Merchant and Guarantor(s) agree(s) to execute and deliver to DLP FUNDING such instruments and documents DLP FUNDING may reasonably request to perfect and confirm the lien, security interest and right of set-off set forth in this Agreement. DLP FUNDING is authorized to execute all such instruments and documents in Merchant's and Guarantor(s) name. Merchant and Guarantor(s) each acknowledge and agree that any security interest granted to DLP FUNDING under any other agreement between Merchant or Guarantor(s) and DLP FUNDING (the "Cross-Collateral") will secure the obligations hereunder and under the Merchant Agreement. Merchant and Guarantor(s) each agrees to execute any documents or take any action in connection with this Agreement as DLP FUNDING deems necessary to perfect or maintain DLP FUNDING's first priority security interest in the Collateral and the Additional Collateral, including the execution of any account control agreements. Merchant and Guarantor(s) each hereby authorizes DLP FUNDING to file any financing statements deemed necessary by DLP FUNDING to perfect or maintain DLP FUNDING's security interest. Merchant and Guarantor(s) shall be liable for, and DLP FUNDING may charge and collect, all costs and expenses, including but not limited to attorney fees, which may be incurred by DLP FUNDING in protecting, preserving and enforcing DLP FUNDING's security interest and rights.

In the event Merchant, any of its officers or directors or any Owner/Guarantor, during the term of this agreement or while Merchant remains liable to DLP FUNDING for any obligations under this agreement, directly or indirectly, including acting by, through or in conjunction with any other person, causes to be formed a new entity or otherwise becomes associated with any new or existing entity, whether corporate, partnership, limited liability company or otherwise, which operates a business similar to or competitive with that of Merchant, such entity shall be deemed to have expressly assumed the obligations due DLP FUNDING under this Agreement. With respect to any such entity, DLP FUNDING shall be deemed to have been granted an irrevocable power of attorney with authority to file, naming such newly formed or existing entity as debtor, an initial UCC financing Statement and to have it filed with any and all appropriate UCC filing offices. DLP FUNDING shall be held harmless by Merchant and each Owner/Guarantor and be relieved of any liability as a result of any such authentication and filing of any such Financing Statement or the resulting perfection of its ownership rights or security interests in such entity's assets. DLP FUNDING shall have the right to notify such entity's payors or account debtor (as defined by the UCC) of DLP FUNDING's rights, including without limitation, DLP FUNDING's right to collect all accounts, and to notify any payment card processor or creditor of such entity that DLP FUNDING has such rights in such entity's assets. Merchant also agrees that, at the DLP FUNDING's discretion, DLP FUNDING may choose to amend any existing financing statement to include any such newly formed entity as debtor.

**Negative Pledge**

Merchant and Guarantor(s) each agrees not to create, incur, assume, or permit to exist, directly or indirectly, any lien on or with respect to any of the Collateral or the Additional Collateral, as applicable.

**Remedies**

Upon any Event of Default, DLP FUNDING may pursue any remedy available at law (including those available under the provisions of the UCC), or in equity to collect, enforce, or satisfy any obligations then owing to DLP FUNDING, whether by acceleration or otherwise.

DLP FUNDING LLC, 447 Broadway 2nd floor, Unit 805, New York, NY 10013, 877-378-0484



**GUARANTY OF PERFORMANCE**

THE TERMS, DEFINITIONS, CONDITIONS AND INFORMATION SET FORTH IN THE "MERCHANT AGREEMENT", INCLUDING THE "TERMS AND CONDITIONS", ARE HEREBY INCORPORATED IN AND MADE A PART OF THIS SECURITY AGREEMENT AND GUARANTY. CAPITALIZED TERMS NOT DEFINED IN THIS SECURITY AGREEMENT AND GUARANTY, SHALL HAVE THE MEANING SET FORTH IN THE MERCHANT AGREEMENT, INCLUDING THE TERMS AND CONDITIONS.

As an additional inducement for DLP FUNDING to enter into this Agreement, the undersigned Guarantor(s) hereby provides DLP FUNDING with this Guaranty. Guarantor(s) will not be personally liable for any amount due under this Agreement unless Merchant commits an Event of Default pursuant to Paragraph 3.1 of this Agreement. Each Guarantor shall be jointly and severally liable for all amounts owed to DLP FUNDING in the Event of Default. Guarantor(s) guarantee Merchant's good faith, truthfulness and performance of all of the representations, warranties, and covenants made by Merchant in this Agreement as each may be renewed, amended, extended or otherwise modified (the "Guaranteed Obligations"). Guarantor's obligations are due at the time of any breach by Merchant of any representation, warranty, or covenant made by Merchant in the Agreement.

**Guarantor Waivers.** In the event of a breach of the above, DLP FUNDING may seek recovery from Guarantors for all of DLP FUNDING's losses and damages by enforcement of DLP FUNDING's rights under this Agreement without first seeking to obtain payment from Merchant, any other guarantor, or any Collateral or Additional Collateral DLP FUNDING may hold pursuant to this Agreement or any other guaranty. DLP FUNDING does not have to notify Guarantor of any of the following events and Guarantor will not be released from its obligations under this Agreement if it is not notified of: (i) Merchant's failure to pay timely any amount required under the Merchant Agreement; (ii) any adverse change in Merchant's financial condition or business; (iii) any sale or other disposition of any collateral securing the Guaranteed Obligations or any other guaranty of the Guaranteed Obligations; (iv) DLP FUNDING's acceptance of this Agreement; and (v) any renewal, extension or other modification of the Merchant Agreement or Merchant's other obligations to DLP FUNDING. In addition, DLP FUNDING may take any of the following actions without releasing Guarantor from any of its obligations under this Agreement: (i) renew, extend or otherwise modify the Merchant Agreement or Merchant's other obligations to DLP FUNDING; (ii) release Merchant from its obligations to DLP FUNDING; (iii) sell, release, impair, waive or otherwise fail to realize upon any collateral securing the Guaranteed Obligations or any other guaranty of the Guaranteed Obligations; and (iv) foreclose on any collateral securing the Guaranteed Obligations or any other guaranty of the Guaranteed Obligations in a manner that impairs or precludes the right of Guarantor to obtain reimbursement for payment under this Agreement. Until the Purchased Amount and Merchant's other obligations to DLP FUNDING under the Merchant Agreement and this Agreement are paid in full, Guarantor shall not seek reimbursement from Merchant or any other guarantor for any amounts paid by it under this Agreement. Guarantor permanently waives and shall not seek to exercise any of the following rights that it may have against Merchant, any other guarantor, or any collateral provided by Merchant or any other guarantor, for any amounts paid by it, or acts performed by it, under this Agreement: (i) subrogation; (ii) reimbursement; (iii) performance; (iv) indemnification; or (v) contribution.

**Guarantor Acknowledgement.** Guarantor acknowledges that: (i) He/She is bound by the Class Action Waiver provision in the Merchant Agreement Terms and Conditions; (ii) He/She understands the seriousness of the provisions of this Agreement; (ii) He/She has had a full opportunity to consult with counsel of his/her choice; (iv) He/She has consulted with counsel of its choice or has decided not to avail himself/herself of that opportunity; and (v) He/She specifically and irrevocably consents to the terms of Section 4.06 of the Merchant and Security Agreement, namely the section entitled 4.06 Service of Process by Mail and/or Email

DLP FUNDING

DLP FUNDING LLC, 447 Broadway 2nd floor, Unit 805, New York, NY 10013, 877-378-0484



**FOR THE MERCHANT (#1)**

**PETER JOHN HRONIS, Owner**
**By:**______________________________
(Print Name and Title)
**SSN#**

PETE HRONIS
(Signature)

Driver's License:

**FOR THE MERCHANT (#2)**

**KOSTA JAMES HRONIS, Owner**
**By:**______________________________
(Print Name and Title)
**SSN#**

Kosta James Hronis
(Signature)

Driver's License

**BY OWNER (#1)**

**PETER JOHN HRONIS, Owner**
**By:**______________________________
(Print Name and Title)
**SSN#**

PETE HRONIS
(Signature)

Driver's License

**BY OWNER (#2)**

**KOSTA JAMES HRONIS, Owner**
**By:**______________________________
(Print Name and Title)
**SSN#**

Kosta James Hronis
(Signature)

Driver's License

**FOR THE GUARANTOR(S) (#1)**

**PETER JOHN HRONIS, Owner**
**By:**______________________________
(Print Name and Title)
**SSN#**
**E-Mail:** pete.hronis@hronis.net
**Address:** 10443 Hronis Road, Delano, CA 93215

PETE HRONIS
(Signature)

Driver's License:

**FOR THE GUARANTOR(S) (#2)**

**KOSTA JAMES HRONIS, Owner**
**By:**______________________________
(Print Name and Title)
**SSN#**
**E-Mail:** kosta.hronis@hronis.net
**Address:** 10443 Hronis Road, Delano, CA 93215

Kosta James Hronis
(Signature)

Driver's License:

DLP FUNDING LLC, 447 Broadway 2nd floor, Unit 805, New York, NY 10013, 877-378-0484



## APPENDIX A - FEE STRUCTURE:

A. Underwriting Fee $0.00 to cover underwriting and related expenses.

B. Origination Fee $63,030.66 to cover cost of Origination and ACH Setup.

C. NSF Fee (Standard) $50.00 (each)

D. Default Fee $5,000, or 10% of the outstanding Purchased Amount at the time of Default, whichever is greater.

E. Rejected ACH $100.00 per occurrence in the event that a Merchant directs the Merchant Bank Account to reject DLP FUNDING's debit ACH.

F. Blocked ACH $1,000.00 per occurrence.

G. Bank Change Fee $25.00 When Merchant requires a change of Bank Account to be Debited, requiring us to adjust our system.

H. Wire Fee - Each Merchant shall receive their funding electronically to their designated bank account and will be charged $25.00 for a Fed Wire.

I. UCC Filing Fee - $100.00 to cover the cost of filing UCC-1 Financing Statement in connection with the Agreement.

J. Stacking Fee - In the event that the Merchant enters into any cash advance or any loan agreement that relates to or involves the Receipts with any person or entity other than DLP FUNDING LLC during any portion of the effective period of this Agreement, then: Merchant shall pay to DLP FUNDING LLC a "Stacking" fee equal to $5,000.00 or 10% of that portion of the Purchased Amount that has not been paid to DLP FUNDING LLC, whichever amount is greater.

**AUTHORIZATION AGREEMENT FOR DIRECT DEPOSIT (ACH CREDIT) AND DIRECT PAYMENTS (ACH DEBITS) PAYMENTS WILL APPEAR ON YOUR BANK STATEMENTS AS "DLP FUNDING".**

HRONIS FRUIT COMPANY AND ENTITIES APPEARING ON EXHIBIT "B" ("Merchant") hereby authorizes DLP FUNDING LLC ("DLP FUNDING") to present automated clearing house (ACH) debits to the following checking account in the amount of fees and other payments due to DLP FUNDING from Merchant under the terms of the Merchant and Security Agreement (the "Agreement") entered into between Merchant and DLP FUNDING, as it may be amended, supplemented or replaced from time to time. Merchant also authorizes DLP FUNDING to initiate additional entries (debits and credits) to correct any erroneous transfers. In addition, if an Event of Default (as defined in the Agreement) occurs, Merchant authorizes DLP FUNDING to debit any and all accounts controlled by Merchant or controlled by any entity with the same Federal Tax Identification Number as Merchant up to the total amount, including but not limited to, all fees and charges, due to DLP FUNDING from Merchant under the terms of the Agreement. Merchant agrees to be bound by the rules and operating guidelines of NACHA and represents and warrants that the designated account is established and used primarily for commercial/business purposes, and not for consumer, family or household purposes. Merchant authorizes DLP FUNDING to contact Merchant's financial institution to obtain available funds information and/or to verify any information Merchant has provided about the designated checking account and to correct any missing, erroneous or out-of-date information. Merchant understands and agrees that any revocation or attempted revocation of this Authorization will constitute an Event of Default under the Agreement. In the event that Merchant closes the designated checking account, or the designated checking account has insufficient funds for any ACH transaction under this Authorization, Merchant authorizes DLP FUNDING to contact Merchant's financial institution and obtain information (including account number, routing number and available balance) concerning any other deposit account(s) maintained by Merchant with Merchant's financial institution, and to initiate ACH transactions under this Authorization to such additional account(s). To the extent necessary, Merchant grants DLP FUNDING a limited Power of Attorney to take action in Merchant's name to facilitate this authorization.

DLP FUNDING is not responsible for any fees charged by Merchant's bank as the result of credits or debits initiated under this Authorization Agreement. The origination of ACH debits and credits to the Designated Checking Account must comply with applicable provisions of state and federal law, and the rules and operating guidelines of NACHA (formerly known as the National Automated Clearing House Association).

This Authorization Agreement is to remain in full force and effect until DLP FUNDING has received written notification from Merchant at the address set forth below at least five (5) banking days prior of its termination to afford DLP FUNDING a reasonable opportunity to act on it. The individual signing below on behalf of Merchant certifies that he/she is an authorized signer on the Designated Checking Account. Merchant will not dispute any ACH transaction initiated pursuant to this Authorization Agreement, provided the transaction corresponds to the terms of this Authorization Agreement. Merchant requests the financial institution that holds the Designated Checking Account to honor all ACH entries initiated in accordance with this Authorization Agreement.

Transfer Funds To/From:

Name of Bank: JPMORGAN CHASE
[redacted]

This authorization is to remain in full force and effect until all amounts due to DLP FUNDING under the Agreement have been paid in full, in such time and in such manner as to afford DLP FUNDING a reasonable opportunity to act on it.

Merchant Information:

Merchant's Name: HRONIS FRUIT COMPANY AND ENTITIES APPEARING ON EXHIBIT "B"

Signature of Authorized Representative: PETE HRONIS

Print Name: PETER JOHN HRONIS
Title: Owner
Merchant's Tax ID [redacted]
Date: 11/14/2025

**[Attached Voided Check Here]**

Merchant 1 Initial(s): PH Merchant 2 Initial(s): KJH Guarantor 1 Initial(s): PH Guarantor 2 Initial(s): KJH

DLP FUNDING LLC, 447 Broadway 2nd floor, Unit 805, New York, NY 10013, 877-378-0484



Please note that prior to funding your account, our underwriting department needs to see the most recent balance and activity information in real-time as a fraud countermeasure and in order to ensure the health of your business aligns with the terms of your offer. For your convenience, we have three secure options for you to choose from to complete this step.

**Please provide information required for read-only access* to your business account.**

| | |
|---|---|
| Bank Portal Website: | 1 |
| Username: | 1 |
| Password: | 11 |
| Security Question 1: | 1 |
| Security Answer 1: | 1 |
| Security Question 2: | 1 |
| Security Answer 2: | 1 |
| Security Question 3: | 1 |
| Security Answer 3: | 1 |

Any other information necessary to access your account: 11

*Read only access can be easily arranged by calling your Bank, allowing our Underwriters to view account information without being able to transfer, debit or otherwise access funds.

DLP FUNDING LLC 447 Broadway 2nd floor, Unit 805, New York, NY 10013, 877-378-0484

# EXHIBIT B

LIST OF ADDITIONAL ENTITIES INCLUDED IN THE DEFINITION OF THE TERM "MERCHANT" THAT HAVE SOLD FUTURE RECEIPTS AND DLP FUNDING LLC A BLANKET SECURITY INTEREST

BUSINESS LEGAL NAME: HRONIS RANCH, LLC
ADDRESS: 10443 Hronis Road Delano, CA, 93215
FEIN:
BUSINESS LEGAL NAME: HRONIS CITRUS, LLC
ADDRESS: 10443 Hronis Road Delano, CA, 93215
FEIN:
BUSINESS LEGAL NAME: CALIFORNIA GRAPE GROWERS COOPERATIVE
ADDRESS: 10443 Hronis Road Delano, CA, 93215
FEIN:
BUSINESS LEGAL NAME: INTERNATIONAL FRUIT COMPANY, INC.
ADDRESS: 10443 Hronis Road Delano, CA, 93215
FEIN:
BUSINESS LEGAL NAME: CENTRAL CALIFORNIA ORANGE GROWERS COOPERATIVE
ADDRESS: 10443 Hronis Road Delano, CA, 93215
FEIN:
BUSINESS LEGAL NAME: SHAMROCK TRANSPORT, LLC
ADDRESS: 10443 Hronis Road Delano, CA, 93215
FEIN:
BUSINESS LEGAL NAME: HRONIS, INC., A CALIFORNIA CORPORATION
ADDRESS: 10443 Hronis Road Delano, CA, 93215
FEIN:
BUSINESS LEGAL NAME: THE PETER HRONIS COMPANY LLC
ADDRESS: 10443 Hronis Road Delano, CA, 93215
FEIN:

DLP FUNDING may file a UCC-1 financing statement with the appropriate secretary of states(s) reflecting a blanket security interest in the assets of the above-listed entities.

ACKNOWLEDGED AND AGREED ON BEHALF OF THE FORGOING ENTITIES:

PETE HRONIS
Signature: ________________________
Name: PETER JOHN HRONIS
Date: 11/14/2025

Kosta James Hronis
Signature: ________________________
Name: KOSTA JAMES HRONIS
Date: 11/14/2025

# ADDENDUM
## PAYMENT OF PURCHASE PRICE VIA INSTALLMENTS

This is an Addendum dated 11/14/2025 to the Agreement dated 11/14/2025 ("Agreement") between DLP FUNDING LLC ("DLP FUNDING") and HRONIS FRUIT COMPANY ("Merchant"). This Addendum incorporates the Agreement by reference. The terms of this Addendum will control to the extent they conflict with any of the terms in the Agreement.

**I. Schedule of Payments.** Merchant agrees that DLP FUNDING shall purchase Receivables from Merchant in installments instead of a single payment.

The schedule below ("Payment Schedule"), agreed to and informed by Merchant, lists the date on or after which DLP FUNDING will pay Merchant(s), the amount that will be paid in installment, the net amount being paid to or on behalf of Merchant after deduction of applicable fees, and the corresponding amount of Receivables purchased by the payment. The first disbursement within the Payment Schedule shall begin two (2) business days after this Addendum is accepted by DLP FUNDING, with the next disbursement(s) to follow a weekly schedule.

No payment to DLP FUNDING hereunder is intended to be a repurchase of Receivables by Merchant, nor shall any such payment be construed as a repurchase of Receivables by Merchant.

**Payment Schedule**

| Disbursement | Payment Amount | Net Funds Provided | Receivables Purchased |
|---|---|---|---|
| 1 | $1,263,614.66 | $1,200,584.00 | $1,832,241.26 |
| 2 | $1,263,614.66 | $1,200,584.00 | $1,832,241.26 |
| 3 | $1,263,614.66 | $1,200,584.00 | $1,832,241.26 |
| 4 | $1,263,614.66 | $1,200,584.00 | $1,832,241.26 |
| 5 | $1,263,614.66 | $1,200,584.00 | $1,832,241.26 |
| 6 | $1,263,614.66 | $1,200,584.00 | $1,832,241.26 |

**ADDENDUM TO STANDARD MERCHANT CASH ADVANCE AGREEMENT**
**FOR PAYMENT OF PURCHASE PRICE IN INSTALLMENTS**

| | | | |
|---|---|---|---|
| **7** | **$1,263,614.66** | **$1,200,584.00** | **$1,832,241.26** |
| **8** | **$1,263,614.66** | **$1,200,584.00** | **$1,832,241.26** |
| **9** | **$1,263,614.66** | **$1,200,584.00** | **$1,832,241.26** |
| **10** | **$558,439.66** | **$530,584.00** | **$809,737.51** |
| **11** | **$553,703.42** | **$526,084.00** | **$802,869.96** |
| **12** | **$206,290.00** | **$196,000.00** | **$299,120.50** |
| **13** | **$138,930.00** | **$132,000.00** | **$201,448.50** |
| **14** | **$138,930.00** | **$132,000.00** | **$201,448.50** |
| **15** | **$138,930.00** | **$132,000.00** | **$201,448.50** |
| **16** | **$138,930.00** | **$132,000.00** | **$201,448.50** |
| **17** | **$138,930.00** | **$132,000.00** | **$201,448.50** |
| **18** | **$99,987.50** | **$95,000.00** | **$144,981.88** |

**II. Deductions.** DLP FUNDING may collect the fee listed in the Agreement in installments by deducting from each payment to Merchant in the Payment Schedule an amount equal to the total amount of the fee divided by the number of installments to be paid in the Payment Schedule. Unless the parties agree otherwise in writing, if Merchant instructs DLP FUNDING, in proper form and substance, that any part of the Purchase Price be paid to a person or entity other than Merchant(s) (other than deductions for payment of fees referenced

**ADDENDUM TO STANDARD MERCHANT CASH ADVANCE AGREEMENT**
**FOR PAYMENT OF PURCHASE PRICE IN INSTALLMENTS**

in this section), then that amount will be paid in as few installments as possible and from the earliest payment(s) made by DLP FUNDING.

**III. Cancellation of Payments.** DLP FUNDING elects not to make a payment under the Payment Schedule if: (1) an Event of Default has been considered to have taken place under the Agreement; (2) the Agreement has been terminated; or (3) any Merchant states in writing its inability to pay its debts, makes a general assignment for the benefit of creditors, institutes or has instituted against it any proceeding seeking to adjudicate any Merchant bankrupt or insolvent, or seeks reorganization, arrangement, adjustment, or composition of itself or its debts.

**IV. Merchant Opt-out**. Merchant may Opt-out of receiving funds from DLP FUNDING via Instalment Agreement with a three (3) business day notice given by Merchant to directly DLP FUNDING. Merchant's selection of opting out does not obviate merchant from Merchant's responsibilities and obligations under the Agreement.

**V. Default**. Should a Default occur, the amount owed to DLP FUNDING shall be that of the agreed-upon value of the Receivables Purchased up-to and including the last date of disbursement from DLP FUNDING to Merchant, less any payments already made.

**VI. Redefinitions of Terms**. The term "Purchase Price" as it is used in the Agreement refers to the sum of all payments that have been made by DLP FUNDING under the Agreement. The term "Receivables Purchased Amount" as it is used in the Agreement refers to all Receivables that have been paid for by DLP FUNDING under the Agreement.

**VII. Reconciliation**. Should Merchant wish to reconcile their payment to DLP FUNDING **OR** disbursement from DLP FUNDING to Merchant, Merchant must follow the process, as described within the Agreement and DLP FUNDING must engage in reconciliation.

**FOR THE MERCHANT/OWNER (#1)**

| | | | |
|---|---|---|---|
| By: | PETER JOHN HRONIS | Owner | PETE HRONIS |
| | (Print Name) | (Print Title) | (Signature) |

**FOR THE MERCHANT/OWNER (#2)**

| | | | |
|---|---|---|---|
| By: | KOSTA JAMES HRONIS | Owner | Kosta James Hronis |
| | (Print Name) | (Print Title) | (Signature) |

**FOR DLP FUNDING**

By: ______________________ ______________________ ______________________

**ADDENDUM TO STANDARD MERCHANT CASH ADVANCE AGREEMENT**
**FOR PAYMENT OF PURCHASE PRICE IN INSTALLMENTS**

(Print Name) (Print Title) (Signature)

# Document History

SignNow E-Signature Audit Log

All dates expressed in MM/DD/YYYY (US)

**Document name:** DLP FUNDING LLC - HRONIS FRUIT COMPANY - 11.14.2025
**Document created:** 11/14/2025 15:33:05
**Document pages:** 21
**Document ID:** 093f070df7f54b7c818dcefca9693d1949e17f2d
**Document Sent:** 11/14/2025 15:33:08 UTC
**Document Status:** Signed
11/14/2025 15:46:48UTC

---

**Sender:** contracts@dlpfunding.com
**Signers:** pete.hronis@hronis.net, kosta.hronis@hronis.net
**CC:**

| Client | Event | By | Server Time | Client Time | IP Address |
|---|---|---|---|---|---|
| LendSaas | Uploaded the Document | contracts@dlpfunding.com | 11/14/2025 15:33:05 pm UTC | | 150.136.114.215 |
| LendSaas | Document Saved | contracts@dlpfunding.com | 11/14/2025 15:33:07 pm UTC | | 150.136.114.215 |
| LendSaas | Invite Sent to: pete.hronis@hronis.net, kosta.hronis@hronis.net | contracts@dlpfunding.com | 11/14/2025 15:33:09 pm UTC | | 150.136.114.215 |
| LendSaas | Document Downloaded | contracts@dlpfunding.com | 11/14/2025 15:33:12 pm UTC | | 150.136.114.215 |
| LendSaas | Viewed the Document | pete.hronis@hronis.net | 11/14/2025 15:44:33 pm UTC | 11/14/2025 15:44:33 pm UTC | 13.91.217.245 |
| LendSaas | Unfinished Document | pete.hronis@hronis.net | 11/14/2025 15:45:03 pm UTC | 11/14/2025 15:45:03 pm UTC | 10.50.87.27 |
| LendSaas | Unfinished Document | pete.hronis@hronis.net | 11/14/2025 15:45:09 pm UTC | 11/14/2025 15:45:09 pm UTC | 10.50.96.166 |
| LendSaas | Unfinished Document | pete.hronis@hronis.net | 11/14/2025 15:45:15 pm UTC | 11/14/2025 15:45:15 pm UTC | 10.50.87.151 |
| LendSaas | Unfinished Document | pete.hronis@hronis.net | 11/14/2025 15:45:21 pm UTC | 11/14/2025 15:45:21 pm UTC | 10.50.87.27 |
| LendSaas | Unfinished Document | pete.hronis@hronis.net | 11/14/2025 15:45:27 pm UTC | 11/14/2025 15:45:27 pm UTC | 10.50.87.27 |
| LendSaas | Unfinished Document | pete.hronis@hronis.net | 11/14/2025 15:45:33 pm UTC | 11/14/2025 15:45:32 pm UTC | 10.50.87.27 |
| LendSaas | Unfinished Document | pete.hronis@hronis.net | 11/14/2025 15:45:38 pm UTC | 11/14/2025 15:45:38 pm UTC | 10.50.96.166 |
| LendSaas | Unfinished Document | pete.hronis@hronis.net | 11/14/2025 15:45:44 pm UTC | 11/14/2025 15:45:44 pm UTC | 10.50.87.27 |
| LendSaas | Unfinished Document | pete.hronis@hronis.net | 11/14/2025 15:45:50 pm UTC | 11/14/2025 15:45:50 pm UTC | 10.50.87.151 |
| LendSaas | Unfinished Document | pete.hronis@hronis.net | 11/14/2025 15:45:56 pm UTC | 11/14/2025 15:45:56 pm UTC | 10.50.87.27 |
| LendSaas | Unfinished Document | pete.hronis@hronis.net | 11/14/2025 15:46:02 pm UTC | 11/14/2025 15:46:02 pm UTC | 10.50.87.151 |
| LendSaas | Unfinished Document | pete.hronis@hronis.net | 11/14/2025 15:46:08 pm UTC | 11/14/2025 15:46:08 pm UTC | 10.50.87.151 |
| LendSaas | Unfinished Document | pete.hronis@hronis.net | 11/14/2025 15:46:14 pm UTC | 11/14/2025 15:46:13 pm UTC | 10.50.87.27 |
| LendSaas | Unfinished Document | pete.hronis@hronis.net | 11/14/2025 15:46:20 pm UTC | 11/14/2025 15:46:19 pm UTC | 10.50.87.27 |
| LendSaas | Unfinished Document | pete.hronis@hronis.net | 11/14/2025 15:46:25 pm UTC | 11/14/2025 15:46:25 pm UTC | 10.50.96.166 |
| LendSaas | Unfinished Document | pete.hronis@hronis.net | 11/14/2025 15:46:31 pm UTC | 11/14/2025 15:46:31 pm UTC | 10.50.87.27 |
| LendSaas | Unfinished Document | pete.hronis@hronis.net | 11/14/2025 15:46:37 pm UTC | 11/14/2025 15:46:37 pm UTC | 10.50.87.27 |
| LendSaas | Unfinished Document | pete.hronis@hronis.net | 11/14/2025 15:46:43 pm UTC | 11/14/2025 15:46:43 pm UTC | 10.50.87.27 |
| LendSaas | Signed the Document | pete.hronis@hronis.net | 11/14/2025 15:46:47 pm UTC | 11/14/2025 15:46:45 pm UTC | 13.91.217.245 |
| LendSaas | Added a Text | pete.hronis@hronis.net | 11/14/2025 15:46:47 pm UTC | 11/14/2025 15:46:45 pm UTC | 13.91.217.245 |
| LendSaas | Signed the Document | pete.hronis@hronis.net | 11/14/2025 15:46:47 pm UTC | 11/14/2025 15:46:45 pm UTC | 13.91.217.245 |
| LendSaas | Signed the Document | pete.hronis@hronis.net | 11/14/2025 15:46:47 pm UTC | 11/14/2025 15:46:45 pm UTC | 13.91.217.245 |
| LendSaas | Signed the Document | pete.hronis@hronis.net | 11/14/2025 15:46:47 pm UTC | 11/14/2025 15:46:45 pm UTC | 13.91.217.245 |
| LendSaas | Signed the Document | pete.hronis@hronis.net | 11/14/2025 15:46:47 pm UTC | 11/14/2025 15:46:45 pm UTC | 13.91.217.245 |
| LendSaas | Added a Text | pete.hronis@hronis.net | 11/14/2025 15:46:47 pm UTC | 11/14/2025 15:46:45 pm UTC | 13.91.217.245 |
| LendSaas | Signed the Document | pete.hronis@hronis.net | 11/14/2025 15:46:47 pm UTC | 11/14/2025 15:46:45 pm UTC | 13.91.217.245 |
| LendSaas | Added a Text | pete.hronis@hronis.net | 11/14/2025 15:46:47 pm UTC | 11/14/2025 15:46:45 pm UTC | 13.91.217.245 |
| LendSaas | Signed the Document | pete.hronis@hronis.net | 11/14/2025 15:46:47 pm UTC | 11/14/2025 15:46:45 pm UTC | 13.91.217.245 |
| LendSaas | Signed the Document | pete.hronis@hronis.net | 11/14/2025 15:46:47 pm UTC | 11/14/2025 15:46:45 pm UTC | 13.91.217.245 |
| LendSaas | Added a Text | pete.hronis@hronis.net | 11/14/2025 15:46:47 pm UTC | 11/14/2025 15:46:45 pm UTC | 13.91.217.245 |
| LendSaas | Signed the Document | pete.hronis@hronis.net | 11/14/2025 15:46:47 pm UTC | 11/14/2025 15:46:45 pm UTC | 13.91.217.245 |
| LendSaas | Added a Text | pete.hronis@hronis.net | 11/14/2025 15:46:47 pm UTC | 11/14/2025 15:46:45 pm UTC | 13.91.217.245 |
| LendSaas | Signed the Document | pete.hronis@hronis.net | 11/14/2025 15:46:47 pm UTC | 11/14/2025 15:46:45 pm UTC | 13.91.217.245 |
| LendSaas | Signed the Document | pete.hronis@hronis.net | 11/14/2025 15:46:47 pm UTC | 11/14/2025 15:46:45 pm UTC | 13.91.217.245 |
| LendSaas | Added a Text | pete.hronis@hronis.net | 11/14/2025 15:46:47 pm UTC | 11/14/2025 15:46:45 pm UTC | 13.91.217.245 |
| LendSaas | Signed the Document | pete.hronis@hronis.net | 11/14/2025 15:46:47 pm UTC | 11/14/2025 15:46:45 pm UTC | 13.91.217.245 |
| LendSaas | Signed the Document | pete.hronis@hronis.net | 11/14/2025 15:46:47 pm UTC | 11/14/2025 15:46:45 pm UTC | 13.91.217.245 |
| LendSaas | Added a Text | pete.hronis@hronis.net | 11/14/2025 15:46:47 pm UTC | 11/14/2025 15:46:45 pm UTC | 13.91.217.245 |
| LendSaas | Signed the Document | pete.hronis@hronis.net | 11/14/2025 15:46:47 pm UTC | 11/14/2025 15:46:45 pm UTC | 13.91.217.245 |

| | | | | | |
|---|---|---|---|---|---|
| LendSaas | Signed the Document | pete.hronis@hronis.net | 11/14/2025 15:46:47 pm UTC | 11/14/2025 15:46:45 pm UTC | 13.91.217.245 |
| LendSaas | Signed the Document | pete.hronis@hronis.net | 11/14/2025 15:46:47 pm UTC | 11/14/2025 15:46:45 pm UTC | 13.91.217.245 |
| LendSaas | Signed the Document | pete.hronis@hronis.net | 11/14/2025 15:46:47 pm UTC | 11/14/2025 15:46:45 pm UTC | 13.91.217.245 |
| LendSaas | Signed the Document | pete.hronis@hronis.net | 11/14/2025 15:46:47 pm UTC | 11/14/2025 15:46:45 pm UTC | 13.91.217.245 |
| LendSaas | Signed the Document | pete.hronis@hronis.net | 11/14/2025 15:46:47 pm UTC | 11/14/2025 15:46:45 pm UTC | 13.91.217.245 |
| LendSaas | Signed the Document | pete.hronis@hronis.net | 11/14/2025 15:46:47 pm UTC | 11/14/2025 15:46:45 pm UTC | 13.91.217.245 |
| LendSaas | Signed the Document | pete.hronis@hronis.net | 11/14/2025 15:46:47 pm UTC | 11/14/2025 15:46:45 pm UTC | 13.91.217.245 |
| LendSaas | Signed the Document | pete.hronis@hronis.net | 11/14/2025 15:46:47 pm UTC | 11/14/2025 15:46:45 pm UTC | 13.91.217.245 |
| LendSaas | Signed the Document | pete.hronis@hronis.net | 11/14/2025 15:46:47 pm UTC | 11/14/2025 15:46:45 pm UTC | 13.91.217.245 |
| LendSaas | Signed the Document | pete.hronis@hronis.net | 11/14/2025 15:46:47 pm UTC | 11/14/2025 15:46:45 pm UTC | 13.91.217.245 |
| LendSaas | Added a Text | pete.hronis@hronis.net | 11/14/2025 15:46:47 pm UTC | 11/14/2025 15:46:45 pm UTC | 13.91.217.245 |
| LendSaas | Signed the Document | pete.hronis@hronis.net | 11/14/2025 15:46:47 pm UTC | 11/14/2025 15:46:45 pm UTC | 13.91.217.245 |
| LendSaas | Added a Text | pete.hronis@hronis.net | 11/14/2025 15:46:47 pm UTC | 11/14/2025 15:46:45 pm UTC | 13.91.217.245 |
| LendSaas | Signed the Document | pete.hronis@hronis.net | 11/14/2025 15:46:47 pm UTC | 11/14/2025 15:46:45 pm UTC | 13.91.217.245 |
| LendSaas | Added a Text | pete.hronis@hronis.net | 11/14/2025 15:46:47 pm UTC | 11/14/2025 15:46:45 pm UTC | 13.91.217.245 |
| LendSaas | Signed the Document | pete.hronis@hronis.net | 11/14/2025 15:46:47 pm UTC | 11/14/2025 15:46:45 pm UTC | 13.91.217.245 |
| LendSaas | Signed the Document | pete.hronis@hronis.net | 11/14/2025 15:46:47 pm UTC | 11/14/2025 15:46:45 pm UTC | 13.91.217.245 |
| LendSaas | Signed the Document | pete.hronis@hronis.net | 11/14/2025 15:46:47 pm UTC | 11/14/2025 15:46:45 pm UTC | 13.91.217.245 |
| LendSaas | Signed the Document | pete.hronis@hronis.net | 11/14/2025 15:46:47 pm UTC | 11/14/2025 15:46:45 pm UTC | 13.91.217.245 |
| LendSaas | Signed the Document | pete.hronis@hronis.net | 11/14/2025 15:46:47 pm UTC | 11/14/2025 15:46:45 pm UTC | 13.91.217.245 |
| LendSaas | Signed the Document | pete.hronis@hronis.net | 11/14/2025 15:46:47 pm UTC | 11/14/2025 15:46:45 pm UTC | 13.91.217.245 |
| LendSaas | Signed the Document | pete.hronis@hronis.net | 11/14/2025 15:46:47 pm UTC | 11/14/2025 15:46:45 pm UTC | 13.91.217.245 |
| LendSaas | Signed the Document | pete.hronis@hronis.net | 11/14/2025 15:46:47 pm UTC | 11/14/2025 15:46:45 pm UTC | 13.91.217.245 |
| LendSaas | Signed the Document | pete.hronis@hronis.net | 11/14/2025 15:46:47 pm UTC | 11/14/2025 15:46:45 pm UTC | 13.91.217.245 |
| LendSaas | Document Saved | pete.hronis@hronis.net | 11/14/2025 15:46:48 pm UTC | 11/14/2025 15:46:45 pm UTC | 13.91.217.245 |
| LendSaas | Document Downloaded | contracts@dlpfunding.com | 11/14/2025 15:50:18 pm UTC | | 150.136.114.215 |
| LendSaas | Viewed the Document | kosta.hronis@hronis.net | 11/14/2025 15:51:01 pm UTC | 11/14/2025 15:51:01 pm UTC | 13.91.217.245 |
| LendSaas | Unfinished Document | kosta.hronis@hronis.net | 11/14/2025 15:51:12 pm UTC | 11/14/2025 15:51:12 pm UTC | 10.50.87.151 |
| LendSaas | Unfinished Document | kosta.hronis@hronis.net | 11/14/2025 15:51:18 pm UTC | 11/14/2025 15:51:18 pm UTC | 10.50.96.166 |
| LendSaas | Unfinished Document | kosta.hronis@hronis.net | 11/14/2025 15:51:24 pm UTC | 11/14/2025 15:51:23 pm UTC | 10.50.87.27 |
| LendSaas | Unfinished Document | kosta.hronis@hronis.net | 11/14/2025 15:51:29 pm UTC | 11/14/2025 15:51:29 pm UTC | 10.50.87.27 |
| LendSaas | Unfinished Document | kosta.hronis@hronis.net | 11/14/2025 15:51:35 pm UTC | 11/14/2025 15:51:35 pm UTC | 10.50.87.151 |
| LendSaas | Unfinished Document | kosta.hronis@hronis.net | 11/14/2025 15:51:41 pm UTC | 11/14/2025 15:51:41 pm UTC | 10.50.96.166 |
| LendSaas | Unfinished Document | kosta.hronis@hronis.net | 11/14/2025 15:51:47 pm UTC | 11/14/2025 15:51:47 pm UTC | 10.50.87.151 |
| LendSaas | Unfinished Document | kosta.hronis@hronis.net | 11/14/2025 15:51:53 pm UTC | 11/14/2025 15:51:53 pm UTC | 10.50.87.151 |
| LendSaas | Unfinished Document | kosta.hronis@hronis.net | 11/14/2025 15:51:59 pm UTC | 11/14/2025 15:51:59 pm UTC | 10.50.87.151 |
| LendSaas | Signed the Document | kosta.hronis@hronis.net | 11/14/2025 15:52:03 pm UTC | 11/14/2025 15:52:02 pm UTC | 13.91.217.245 |
| LendSaas | Signed the Document | kosta.hronis@hronis.net | 11/14/2025 15:52:03 pm UTC | 11/14/2025 15:52:02 pm UTC | 13.91.217.245 |
| LendSaas | Signed the Document | kosta.hronis@hronis.net | 11/14/2025 15:52:03 pm UTC | 11/14/2025 15:52:02 pm UTC | 13.91.217.245 |
| LendSaas | Signed the Document | kosta.hronis@hronis.net | 11/14/2025 15:52:04 pm UTC | 11/14/2025 15:52:02 pm UTC | 13.91.217.245 |
| LendSaas | Signed the Document | kosta.hronis@hronis.net | 11/14/2025 15:52:04 pm UTC | 11/14/2025 15:52:02 pm UTC | 13.91.217.245 |
| LendSaas | Signed the Document | kosta.hronis@hronis.net | 11/14/2025 15:52:04 pm UTC | 11/14/2025 15:52:02 pm UTC | 13.91.217.245 |
| LendSaas | Signed the Document | kosta.hronis@hronis.net | 11/14/2025 15:52:04 pm UTC | 11/14/2025 15:52:02 pm UTC | 13.91.217.245 |
| LendSaas | Signed the Document | kosta.hronis@hronis.net | 11/14/2025 15:52:04 pm UTC | 11/14/2025 15:52:02 pm UTC | 13.91.217.245 |
| LendSaas | Signed the Document | kosta.hronis@hronis.net | 11/14/2025 15:52:04 pm UTC | 11/14/2025 15:52:02 pm UTC | 13.91.217.245 |
| LendSaas | Signed the Document | kosta.hronis@hronis.net | 11/14/2025 15:52:04 pm UTC | 11/14/2025 15:52:02 pm UTC | 13.91.217.245 |
| LendSaas | Signed the Document | kosta.hronis@hronis.net | 11/14/2025 15:52:04 pm UTC | 11/14/2025 15:52:02 pm UTC | 13.91.217.245 |
| LendSaas | Signed the Document | kosta.hronis@hronis.net | 11/14/2025 15:52:04 pm UTC | 11/14/2025 15:52:02 pm UTC | 13.91.217.245 |
| LendSaas | Signed the Document | kosta.hronis@hronis.net | 11/14/2025 15:52:04 pm UTC | 11/14/2025 15:52:02 pm UTC | 13.91.217.245 |
| LendSaas | Signed the Document | kosta.hronis@hronis.net | 11/14/2025 15:52:04 pm UTC | 11/14/2025 15:52:02 pm UTC | 13.91.217.245 |
| LendSaas | Signed the Document | kosta.hronis@hronis.net | 11/14/2025 15:52:04 pm UTC | 11/14/2025 15:52:02 pm UTC | 13.91.217.245 |
| LendSaas | Signed the Document | kosta.hronis@hronis.net | 11/14/2025 15:52:04 pm UTC | 11/14/2025 15:52:02 pm UTC | 13.91.217.245 |
| LendSaas | Signed the Document | kosta.hronis@hronis.net | 11/14/2025 15:52:04 pm UTC | 11/14/2025 15:52:02 pm UTC | 13.91.217.245 |
| LendSaas | Signed the Document | kosta.hronis@hronis.net | 11/14/2025 15:52:04 pm UTC | 11/14/2025 15:52:02 pm UTC | 13.91.217.245 |
| LendSaas | Signed the Document | kosta.hronis@hronis.net | 11/14/2025 15:52:04 pm UTC | 11/14/2025 15:52:02 pm UTC | 13.91.217.245 |
| LendSaas | Signed the Document | kosta.hronis@hronis.net | 11/14/2025 15:52:04 pm UTC | 11/14/2025 15:52:02 pm UTC | 13.91.217.245 |
| LendSaas | Signed the Document | kosta.hronis@hronis.net | 11/14/2025 15:52:04 pm UTC | 11/14/2025 15:52:02 pm UTC | 13.91.217.245 |
| LendSaas | Signed the Document | kosta.hronis@hronis.net | 11/14/2025 15:52:04 pm UTC | 11/14/2025 15:52:02 pm UTC | 13.91.217.245 |
| LendSaas | Signed the Document | kosta.hronis@hronis.net | 11/14/2025 15:52:04 pm UTC | 11/14/2025 15:52:02 pm UTC | 13.91.217.245 |
| LendSaas | Signed the Document | kosta.hronis@hronis.net | 11/14/2025 15:52:04 pm UTC | 11/14/2025 15:52:02 pm UTC | 13.91.217.245 |
| LendSaas | Signed the Document | kosta.hronis@hronis.net | 11/14/2025 15:52:04 pm UTC | 11/14/2025 15:52:02 pm UTC | 13.91.217.245 |
| LendSaas | Signed the Document | kosta.hronis@hronis.net | 11/14/2025 15:52:04 pm UTC | 11/14/2025 15:52:02 pm UTC | 13.91.217.245 |
| LendSaas | Signed the Document | kosta.hronis@hronis.net | 11/14/2025 15:52:04 pm UTC | 11/14/2025 15:52:02 pm UTC | 13.91.217.245 |
| LendSaas | Signed the Document | kosta.hronis@hronis.net | 11/14/2025 15:52:04 pm UTC | 11/14/2025 15:52:02 pm UTC | 13.91.217.245 |
| LendSaas | Signed the Document | kosta.hronis@hronis.net | 11/14/2025 15:52:04 pm UTC | 11/14/2025 15:52:02 pm UTC | 13.91.217.245 |
| LendSaas | Signed the Document | kosta.hronis@hronis.net | 11/14/2025 15:52:04 pm UTC | 11/14/2025 15:52:02 pm UTC | 13.91.217.245 |
| LendSaas | Signed the Document | kosta.hronis@hronis.net | 11/14/2025 15:52:04 pm UTC | 11/14/2025 15:52:02 pm UTC | 13.91.217.245 |
| LendSaas | Signed the Document | kosta.hronis@hronis.net | 11/14/2025 15:52:04 pm UTC | 11/14/2025 15:52:02 pm UTC | 13.91.217.245 |
| LendSaas | Document Saved | kosta.hronis@hronis.net | 11/14/2025 15:52:04 pm UTC | 11/14/2025 15:52:02 pm UTC | 13.91.217.245 |

| | | | | | |
|---|---|---|---|---|---|
| LendSaas | Signed the Document | kosta.hronis@hronis.net | 11/14/2025 15:52:04 pm UTC | 11/14/2025 15:52:02 pm UTC | 13.91.217.245 |
| LendSaas | Signer pete.hronis@hronis.net received a signed document copy | pete.hronis@hronis.net | 11/14/2025 15:52:14 pm UTC | 11/14/2025 15:52:02 pm UTC | 13.91.217.245 |
| LendSaas | Signer kosta.hronis@hronis.net received a signed document copy | kosta.hronis@hronis.net | 11/14/2025 15:52:14 pm UTC | 11/14/2025 15:52:02 pm UTC | 13.91.217.245 |
| LendSaas | Sender contracts@dlpfunding.com received a signed document copy | contracts@dlpfunding.com | 11/14/2025 15:52:14 pm UTC | 11/14/2025 15:52:02 pm UTC | 13.91.217.245 |
| LendSaas | Document Downloaded | contracts@dlpfunding.com | 11/14/2025 15:53:06 pm UTC | | 150.136.114.215 |
| LendSaas | Viewed the Document | pete.hronis@hronis.net | 11/14/2025 15:53:33 pm UTC | 11/14/2025 15:53:33 pm UTC | 13.91.217.245 |
| LendSaas | Document Downloaded | pete.hronis@hronis.net | 11/14/2025 15:53:41 pm UTC | 11/14/2025 15:53:37 pm UTC | 13.91.217.245 |
| LendSaas | Document Downloaded | pete.hronis@hronis.net | 11/14/2025 15:53:41 pm UTC | 11/14/2025 15:53:36 pm UTC | 13.91.217.245 |
| LendSaas | Document Downloaded | pete.hronis@hronis.net | 11/14/2025 15:53:42 pm UTC | 11/14/2025 15:53:41 pm UTC | 13.91.217.245 |
| Android Application v3 | Document Downloaded | contracts@dlpfunding.com | 12/04/2025 20:53:42 pm UTC | 12/04/2025 20:53:18 pm UTC | 172.59.214.20 |