29

GREGORY M. SALVATO (SBN 126285)
Gsalvato@salvatoboufadel.com
JOSEPH BOUFADEL (SBN 267312)
Jboufadel@salvatoboufadel.com
SALVATO BOUFADEL LLP
355 South Grand Avenue, Suite 2450
Los Angeles, California 90071
Telephone: (213) 423-0931

Local Counsel for Plaintiff and Counter-Defendant
DLP FUNDING, LLC

**UNITED STATES BANKRUPTCY COURT**

**EASTERN DISTRICT OF CALIFORNIA**

**FRESNO DIVISION**

| | |
|---|---|
| In re:<br><br>HRONIS, INC., a California corporation, et al.,<br>Debtors-in-Possession. | Case No. 1:26-bk-10978<br>(Jointly Administered)<br><br>Chapter 11<br><br>Adv. Proc. No. 1:26-ap-01017 |
| DLP FUNDING LLC, a New York limited liability company;<br><br>Plaintiff,<br><br>v.<br><br>HRONIS, INC., a California corporation;<br>HRONIS FRUIT COMPANY LLC, a California limited liability company;<br>HRONIS RANCH, LLC, a California limited liability company;<br>HRONIS CITRUS, LLC, a California limited liability company; and<br>DOES 1 through 20, inclusive,<br>Defendants. | DCN: SB-1<br><br>**Memorandum of Points and Authorities in Support of Plaintiff and Counter-Defendant DLP Funding, LLC's Motion to Dismiss Defendants and Counter-Claimants' Counterclaim**<br>**[Dkt. Nos. 18-19]**<br><br><u>Hearing Date</u>:<br>Date: August 26, 2026<br>Time: 11:00 a.m. PST<br>Place: Courtroom 13 (5th Floor)<br>2500 Tulare Street<br>Fresno, CA 93721<br><br>Judge: Hon. René Lastreto II |
| AND RELATED COUNTERCLAIMS. | |

Continuation of Caption:

SHANNA M. KAMINSKI (P74013)
*Admitted Pro Hac Vice*
KAMINSKI LAW, PLLC
PO Box 247
Grass Lake, Michigan 49240-0247
Telephone: (247) 462-7111
skaminski@kaminskilawpllc.com

Attorneys for Plaintiff and Counter-Defendant
DLP FUNDING, LLC

# TABLE OF CONTENTS


1. Introduction. ........ 8

2. Relevant Factual Background. ........ 9

3. Arguments. ........ 12

   3.1. The Motion to Dismiss legal standards under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. ........ 12

   3.2. Counts I, II, III, IV, and V must be dismissed because they are not substantive causes of action and there is no substantive cause of action in the Counterclaim to which the declaratory relief requests relate. ........ 13

      3.2.1. Counts I and II must be dismissed because they are not relevant to any substantive cause of action. ........ 15

      3.2.2. Counts III, IV, and V must be dismissed because a determination that the transaction is a loan is not relevant to any substantive claim and the Defendants released the claim in the Stipulation of Settlement. ........ 16

   3.3. Count V must be dismissed because the claim is barred by applicable law and the release in the Stipulation of Settlement. ........ 20

      3.3.1. The Defendants are barred from bringing the claim under the doctrine of judicial estoppel, res judicata, and because they released all claims against DLP. ........ 20

      3.3.2. New York law, not California law, governs the transaction. ........ 20

      3.3.3. Affirmative usury claims are barred under New York law. ........ 24

   3.4. Count VII must be dismissed because 11 U.S.C. § 506 does not apply to sales and for lack of subject matter jurisdiction. ........ 25

   3.5. Counts VIII and IX should be dismissed because they are implausible as a matter of law and the Defendants lack standing to bring the claims. ........ 27

4. Conclusion. ........ 29

# TABLE OF AUTHORITIES

**Federal Cases** **Page(s)**

*Adams v. Johnson*
355 F.3d 1179 (9th Cir. 2004) .................................................. 13

*Ajetunmobi v. Clarion Mortg. Cap., Inc.*
595 F.App'x 680 (9th Cir. 2014) .................................................. 14

*In re Apple iPhone Antitrust Litig.*
846 F.3d 313 (9th Cir. 2017) .................................................. 12

*Ashcroft v. Iqbal*
556 U.S. 662 (2009) .................................................. 13

*Balistreri v. Pacifica Police Dep't*
901 F.2d 696 (9th Cir. 1990) .................................................. 12

*Bell Atl. Corp. v. Twombly*
550 U.S. 544 (2007) .................................................. 13

*BFP v. Resolution Trust Corp.*
511 U.S. 531, 545 (1994) .................................................. 27

*In re Caremerica, Inc.*
409 B.R. 346 (Bankr. E.D.N.C. 2009) .................................................. 28

*City of Reno v. Netflix, Inc.*
52 F.4th 874 (9th Cir. 2022) .................................................. 13

*Clegg v. Cult Awareness Network*
18 F.3d 752 (9th Cir. 1994) .................................................. 13

*Clifford v. Geico Cas. Co.*
428 F.Supp.3d 317 (D. Nev. 2019) .................................................. 14

*Collins v. MCA Receivables, LLC*
2024 WL 246111 (S.D.N.Y. Jan. 23, 2024) .................................................. 24

*Ctr. for Biological Diversity v. U.S. Forest Serv.*
640 F.App'x 617 (9th Cir. 2016) .................................................. 12

*DaimlerChrysler Corp. v. Cuno*
547 U.S. 332 (2006) .................................................. 12

## TABLE OF AUTHORITIES
(Continued)

*Haymount Urgent Care PC v. GoFund Advance, LLC*
609 F. Supp. 3d 237 (S.D.N.Y. 2022) ........ 24

*Holcombe v. Hosmer*
477 F.3d 1094 (9th Cir. 2007) ........ 19

*In re Hydrogen, L.L.C.*
431 B.R. 337 (Bankr. S.D.N.Y. 2010) ........ 28

*In re ICPW Liquidation Corp.*
600 B.R. 640 (Bankr. C.D. Cal. 2019) ........ 19

*Ileto v. Glock, Inc.*
349 F.3d 1191 (9th Cir. 2003) ........ 12

*Liberty Tool v. Vortex Fishing Sys.*
277 F.3d 1057 (9th Cir. 2001) ........ 21

*Manzarek v. St. Paul Fire & Marine Ins. Co.*
519 F.3d 1025 (9th Cir. 2008) ........ 13

*New Hampshire v. Maine*
532 U.S. 742 (2001) ........ 18

*In re O'Gorman*
115 F.4th 1047 (9th Cir. 2024) ........ 28

*In re Powerburst Corp.*
154 B.R. 307 (Bankr. E.D. Cal. 1993) ........ 22, 23

*Scantek Med., Inc. v. Sabella*
582 F. Supp. 2d 472 (S.D.N.Y. 2008) ........ 24

*Shannon-Vail Five Inc. v. Bunch*
270 F.3d 1207 (9th Cir. 2001) ........ 23

*Shroyer v. New Cingular Wireless Servs., Inc.*
622 F.3d 1035 (9th Cir. 2010) ........ 14

*Stock W., Inc. v. Confederated Tribes of the Colville Rsrv.*
873 F.2d 1221 (9th Cir. 1989) ........ 14

## TABLE OF AUTHORITIES
(Continued)

*Streamlined Consultants, Inc. v. EBF Holdings LLC*
No. 21-CV-9528 (KMK), 2022 WL 4368114 (S.D.N.Y. Sept. 20, 2022) .................. 24

*Swartz v. KPMG LLP*
476 F.3d 756 (9th Cir. 2007) .................. 14

*In re Viscount Air Servs., Inc.*
232 B.R. 416 (Bankr. D. Ariz. 1998) .................. 27

*White v. Lee*
227 F.3d 1214 (9th Cir. 2000) .................. 12

*Williams v. Geico Gen. Ins. Co.*
497 F. Supp. 3d 977 (W.D. Wash. 2020) .................. 14

**California Cases**

*Colaco v. Cavotec SA*
25 Cal.App.5th 1172 (2018) .................. 21, 22

*Hambrecht & Quist Venture Partners v. Am. Med. Internat., Inc.*
38 Cal.App.4th 1532 (1995) .................. 22

*Hughes Elecs. Corp. v. Citibank Delaware*
120 Cal. App. 4th 251 (2004) .................. 22

*Nedlloyd Lines B.V. v. Superior Court*
3 Cal.4th 459, 466 (1992) .................. 21

**Other State Cases**

*Adar Bays, LLC v. GeneSYS ID, Inc.*
37 N.Y.3d 320, 179 N.E.3d 612 (2021) .................. 24

*In re Hunter*
4 N.Y.3d 260 (2005) .................. 19

*Naycation Travel, Inc. v. Glob. Merch. Cash, Inc.*
141 N.Y.S.3d 319 (2d Dep't 2021) .................. 24

## TABLE OF AUTHORITIES
## (Continued)

*Powercap Partners LLC v. Beaux Equities LLC*
179 N.Y.S.3d 894 (Sup. Ct. 2023) .......... 24

**Federal Statutes & Rules**

11 U.S.C.
§ 506 .......... 9, 25, 27
§ 506(a) .......... 8, 11, 25
§ 506(d) .......... 8, 11, 25
§ 541 .......... 25
§ 548 .......... 14, 15, 16, 27, 28
§ 548(a) .......... 8, 11, 15, 16, 17, 27, 28
§ 550 .......... 8, 11, 27
§ 551 .......... 8, 11, 27

Federal Rules of Civil Procedure
Rule 8(a) .......... 12
Rule 8(a)(2) .......... 13
Rule 12(b)(1) .......... 9, 12, 29
Rule 12(b)(6) .......... 9, *passim*

U.S. Const. Article III .......... 12, 27, 28, 29

UCC
§ 9-309 .......... 9, 10
§ 9-406 .......... 11
§ 9-601 .......... 26
§ 9-601(e) .......... 26
§ 9-607 .......... 11

**Other State Statutes**

N.Y. Gen. Oblig. Law § 5-501(b)(6) .......... 24, 25

**Other Authorities**

Restatement (Second) of Conflict of Laws .......... 21

**MEMORANDUM OF POINTS AND AUTHORITIES**

**IN SUPPORT OF**

**MOTION TO DISMISS DEFENDANTS' COUNTERCLAIMS**

Plaintiff and Counter-Defendant DLP Funding, LLC's ("**DLP**" or "**Plaintiff**"), by and through its undersigned counsel, moves to dismiss Defendants and Counter-Claimants Hronis, Inc. *et al's* Counterclaims [Dkt. Nos. 18-19] (the "**Counterclaim**"), and provides as follows:

**1. Introduction.**

Defendants filed several Counterclaims, nearly all of which are declaratory relief claims, in response to the Complaint filed by DLP. Through this Motion, DLP seeks dismissal of all Counts I to IX.[1] As to Counts I through V, the requests for declaratory relief are not viable claims as a matter of law because they are not relevant to any substantive cause of action asserted in the Counterclaim. The law is clear that the Defendants are not entitled to declaratory relief in the absence of an underlying cause of action relating to the declaratory relief sought.

Counts III through V are independently implausible claims because the Defendants are barred from asserting that the Purchase Agreement is anything other than a sale of accounts pursuant to the release of claims in the Stipulation of Settlement and in

[1] Defendants have stylized their claims for relief as: Count I (Declaratory Judgment that DLP Holds No Rights, Claims or Interests Under the MSA as a Result of the Settlement Stipulation); Count II (Declaratory Judgment that DLP's Rights, Claims and Interests Under the MSA and Settlement Stipulation Were Merged into the Judgment); Count III (Declaratory Judgment that DLP Did Not Purchase the Pre-Petition Accounts Pursuant to the MSA); Count IV (Declaratory Judgment that the MSA Represents a Disguised Loan and Not a Sale of Accounts Receivable or Future Receipts); Count V (Declaratory Judgment that the MSA Imposes a Usurious Rate of Interest Under Applicable California Law); [There is no Count VI in the Counterclaim]; Count VII (Determination of Unsecured Status and Voiding Lien Pursuant to 11 U.S.C. §§ 506(a), (d)); Count VIII (Avoidance of Lien, Obligation and Purported Sales as Constructively Fraudulent Transfers Pursuant to 11 U.S.C. § 548(a)); and Count IX (Preservation and Recovery of Avoided Lien Pursuant to 11 U.S.C. §§ 550, 551) of the Counterclaim.

accordance with the doctrines of judicial estoppel and res judicata. (Dkt. No. 1, Complaint; Dkt. No 8: Exhibit 3 to Complaint). Additionally, even if there was a cause of action to which Count V purportedly related to (there is none), Count V is not a plausible claim because the Defendants are barred from obtaining affirmative relief, including declaratory relief, based upon usury under New York law.

Count VII must be dismissed because 11 U.S.C. § 506 does not apply to sales of accounts, and Defendants are barred from asserting that the transaction is a loan. Further, the Court lacks subject matter jurisdiction as to Count VII where there is no case or controversy to be adjudicated because the value of DLP's collateral is known, undisputed, and the lien priority has already been established in this case.

Count VIII and Count IX (which depends on the success of Count VIII) must be dismissed as implausible and for lack of subject matter jurisdiction, as the Defendants cannot plausibly show they suffered a concrete injury because they received a significant cash infusion but never performed their obligations under the terms of the agreement.

As such, all Counterclaims must be dismissed pursuant to Federal Rules of Civil Procedure Rules 12(b)(6) and 12(b)(1), made applicable to this proceeding by Federal Rules of Bankruptcy Procedure Rule 7012.

## 2. Relevant Factual Background.

On November 14, 2025, DLP entered into a Merchant and Security Agreement ("**Purchase Agreement**") with the Defendants. (A true and correct copy of the Purchase Agreement is attached to DLP's Complaint [Dkt. Nos. 1 & 6] as **Exhibit 1**). The Purchase Agreement contains a governing law provision set forth in Paragraph II.5 which provides, in relevant part: "This Agreement shall be governed and construed in accordance with the laws of the state of New York. without regards to any applicable principals of conflicts of law." (Dkt. No. 6: **Exhibit 1** at ECF p. 10 of 25, ¶ II.5).

Because Article 9 of the UCC expressly governs sales of accounts, DLP automatically obtained a security interest in the accounts receivable purchased from the

Defendants that perfected on attachment pursuant to UCC § 9-309. Additionally, the Defendants expressly granted a security interest in all accounts receivable and the proceeds thereof to DLP. (**Exhibit 1:** Purchase Agreement at ECF p. 12 of 25). DLP filed a UCC-1 Financing Statement with the California Secretary of State's Office expressly identifying the transaction as a sale on November 25, 2025, and identifying its collateral as accounts and proceeds. (A true and correct copy of the UCC-1 Financing Statement is attached to DLP's Complaint [Dkt. Nos. 1 & 9] as **Exhibit 2**).

The Defendants immediately defaulted under the Purchase Agreement, which resulted in DLP initiating an action for breach in the Supreme Court for the State of New York for the County of Kings against the Defendants (the "**New York Action**"). On December 22, 2025, DLP and the Defendants executed a Stipulation of Settlement of the New York Action, in which the Defendants **expressly** stipulated that they sold accounts receivable to DLP under the Purchase Agreement. (A true and correct copy of the Stipulation of Settlement is attached to DLP's Complaint [Dkt. Nos. 1 & 8] as **Exhibit 3**). Specifically, the Defendants stipulated that "the Parties entered into a Merchant Cash Advance Agreement ('MCA Agreement') by which DLP ***purchased***, and Defendants ***sold***, the future receivables of Defendants." (Dkt. No. 8: **Exhibit 3** at ECF p. 2) (emphasis added). In addition to expressly stipulating that the Purchase Agreement is a sale, the Defendants also released and forever discharged DLP

> of and from any and all claims, actions, causes of action, suits, debts, dues, sums of money, accounts, interests, reckonings, bonds, bills, specialties, covenants, contracts, controversies, promises, agreements, variances, trespasses, damages, judgments, extents, executions, demands, obligations, costs, expenses, losses, exposures and liabilities whatsoever, of every name and nature, both in law and equity, known and unknown, which against the DLP Releasees, any or all of the Defendants Releasors now have, ever had or shall later have, arising from, upon or by reason of any matter, cause or thing occurring at any time from the beginning of the world to the date hereof.

(*Id.* at ECF p. 4).

When the Defendants breached the terms of the Stipulation of Settlement, DLP first sought to enforce its security interest in the accounts receivable by sending notices pursuant to UCC §§ 9-406 and 9-607 to known account debtors of the Defendants in an effort to collect the accounts receivable purchased from the Defendants. DLP also sought and obtained a judgment against the Defendants in the New York Action on January 5, 2026. (A true and correct copy of the Judgment is attached to DLP's Complaint [Dkt. Nos. 1 & 7] as **Exhibit 4**). DLP was awarded a judgment in the amount of $5,035,160.16 against the Defendants. (Dkt. No. 7: **Exhibit 4** - Judgment, p. 1).

The Defendants filed for Chapter 11 relief in this Court on March 6, 2026. On April 21, 2026, DLP initiated this Adversary Proceeding to determine the ownership and entitlement to accounts receivable being held in accordance with the UCC §§ 9-406 and 9-607 notices.

On May 11, 2026, the Court entered an *Agreed Order (1) Denying Defendants' Motion for Entry of an Order Enforcing the Automatic Stay and Awarding Sanctions against DLP Funding, LLC; and (2) Approving Joint Instructions to Account Defendants Regarding Payment of Accounts Receivable to Segregated Account* in the main bankruptcy docket [Dkt. No. 287]. Pursuant to the order, the pre-petition funds held by account debtors of the Defendants pursuant to the pre-petition notices sent by DLP are being held in trust by the Defendants in a segregated bank account pending resolution of the Adversary Proceeding and further order of the Court.

On June 5, 2026, the Defendants filed the Counterclaim, in which they allege several declaratory relief claims, as well as claims under 11 U.S.C. §§ 506(a) and (d), 548(a), 550, and 551.

This Motion to dismiss followed.

//

//

//

//

**3. Arguments.**

All Counts should be dismissed without leave to amend, as none of the counts state a claim upon which relief can be granted. Additionally, Count VII, VIII, and IX must be dismissed for lack of subject matter jurisdiction because there is no actual case or controversy to be adjudicated.

**3.1. The Motion to Dismiss legal standards under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.**

**Dismissal under Federal Rule 12(b)(1).** A motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction may be brought for failure to allege injury sufficient for Article III standing at any time. *In re Apple iPhone Antitrust Litig.*, 846 F.3d 313, 319 (9th Cir. 2017); *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) ("Because standing and mootness both pertain to a federal court's subject matter jurisdiction under Article III, they are properly raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), not Rule 12(b)(6)."). Article III confines federal jurisdiction to "cases" and "controversies," which requires the plaintiff to establish standing and that the dispute is ripe for adjudication. *See* U.S. Const. Art. III; *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006). Dismissal under Federal Rule 12(b)(1) is appropriate if the plaintiff has failed to plead "sufficient facts to show that there is an injury in fact, that the injury is fairly traceable to defendant's conduct, and that a favorable decision would likely redress the alleged injury." *Ctr. for Biological Diversity v. U.S. Forest Serv.*, 640 F.App'x 617, 618 (9th Cir. 2016).

**Dismissal under Federal Rule 12(b)(6).** A motion to dismiss pursuant to Federal Rule 12(b)(6) "tests the legal sufficiency of the claims asserted in the complaint." *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1199–1200 (9th Cir. 2003). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

Federal Rule 12(b)(6) must be read in conjunction with Federal Rule 8(a), which

requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). To plead sufficiently, a plaintiff must proffer "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[W]here the well-pleaded facts do not permit the court to infer more than a mere possibility of misconduct," the complaint is subject to dismissal. *Iqbal*, 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

In ruling on a Federal Rule 12(b)(6) motion, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). "However, the court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-755 (9th Cir. 1994). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004) (quotes and citation omitted).

**3.2. Counts I, II, III, IV, and V must be dismissed because they are not substantive causes of action and there is no substantive cause of action in the Counterclaim to which the declaratory relief requests relate.**

In Counts I, II, III, IV, and V of the Counterclaim, the Defendants seek various types of declaratory relief. However, there is no substantive cause of action that has been alleged by the Defendants in the Counterclaim that requires any of the declaratory relief that is being sought by the Defendants.

Declaratory relief is not an independent cause of action. *City of Reno v. Netflix,*

*Inc.*, 52 F.4th 874, 878 (9th Cir. 2022) ("[T]he Declaratory Judgment Act does not provide an affirmative cause of action where none otherwise exists."); *Stock W., Inc. v. Confederated Tribes of the Colville Rsrv.*, 873 F.2d 1221, 1225 (9th Cir. 1989) (holding that the Declaratory Judgment Act "only creates a remedy and is not an independent basis for jurisdiction"); *Ajetunmobi v. Clarion Mortg. Cap., Inc.*, 595 F.App'x 680, 684 (9th Cir. 2014) ("Declaratory and injunctive relief are remedies, not causes of action").

Instead, declaratory relief is entirely derivative of a viable cause of action upon which the relief sought is based. *See Williams v. Geico Gen. Ins. Co.*, 497 F. Supp. 3d 977, 985 (W.D. Wash. 2020) ("Injunctive and declaratory relief are also derivative of underlying claims because they are forms of relief, not a standalone claim."); *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1044 (9th Cir. 2010) (affirming dismissal of declaratory relief claims connected to dismissed underlying claims, and reversing denial of declaratory relief claims connected to reinstated underlying claims).

As such, declaratory relief claims that are duplicative of the underlying claims or that will serve no purpose in the adjudication of the main dispute must be dismissed. Here, the only such claim is under 11 U.S.C. § 548. *Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007) (dismissing declaratory relief claim that merely sought a declaration of liability for damages already sought in other causes of action as duplicative); *Clifford v. Geico Cas. Co.*, 428 F. Supp. 3d 317, 326 (D. Nev. 2019) ("Declaratory relief should be denied where it is redundant or where it will serve no purpose in clarifying the dispute between the parties").

Counts I, II, III, IV, and V of the Counterclaim must be dismissed pursuant to Federal Rule 12(b)(6) because the declaratory relief sought in such counts is not linked to any substantive cause of action alleged in the Counterclaim and, as such, the Defendants have failed to state a claim upon which relief can be granted.

#### 3.2.1. Counts I and II must be dismissed because they are not relevant to any substantive cause of action.

In Counts I and II, Defendants request a declaratory judgment that DLP holds no rights or claims under the Purchase Agreement because of the Stipulation of Settlement and that DLP's rights and claims under the Purchase Agreement were merged into the Judgment. (Counterclaim ¶¶ 56-63). However, these claims for declaratory relief are not relevant to the only substantive cause of action alleged in the Counterclaim (i.e. Count VIII under 11 U.S.C. § 548(a)).

Defendants have failed to allege facts sufficient to show that this declaratory relief is relevant, let alone necessary, to the resolution of the Defendants' 11 U.S.C. § 548 claim because DLP's rights under the Stipulation of Settlement do not have any bearing on the elements of a § 548(a) claim. (Counterclaim ¶¶ 51-54 & 56-63).

First, the statutory elements of a § 548(a) claim do not require the Court to determine the present validity or enforceability of DLP's contractual rights under the Purchase Agreement.[2] Bankruptcy Code § 548(a) does not require the Defendants to show that DLP does or does not hold rights under the underlying transaction.

Second, declaratory relief based on the state law doctrine of merger is a non-core matter that does not require adjudication by this Court as part of the avoidance action. Instead, the issue can be raised in connection with the claims brought by DLP in the action.

Accordingly, Counts I and II should be dismissed pursuant to Federal Rule 12(b)(6) as they fail to state a claim upon which relief can be granted.

---

[2] Even if this determination was required (it is not), the Stipulation of Settlement provided that DLP's UCC-1 would be discontinued only "[u]pon the receipt of the full Settlement Funds," which never occurred because the Defendants breached the Stipulation of Settlement shortly after it was executed. (Dkt. No. 8: Complaint Exhibit 3 at ECF p. 3).

### 3.2.2. Counts III, IV, and V must be dismissed because a determination that the transaction is a loan is not relevant to any substantive claim and the Defendants released the claim in the Stipulation of Settlement.

Counts III, IV, and V must be dismissed for two reasons. First, these declaratory relief claims are not relevant to the Defendants' only substantive cause of action under § 548. Second, Defendants are barred from asserting that the transaction was a loan because they expressly stipulated in the Stipulation of Settlement that the Purchase Agreement is a sale and released all past and future claims against DLP based on the Purchase Agreement.

#### A. A determination that the transaction is a loan is not relevant to any substantive claim for relief in the Counterclaim.

In Counts III and IV, Defendants request a declaratory judgment that DLP did not purchase pre-petition accounts under the Purchase Agreement and that the Purchase Agreement is a disguised loan. In Count V, the Defendants request a declaratory judgment that the Purchase Agreement was a usurious loan under California law. However, these claims for declaratory relief are not relevant to the fraudulent transfer claim because § 548(a) does not require the Defendants to prove that the transaction is a loan. This is demonstrated by the fact that the Defendants pled the § 548(a) claim in the alternative, exploring both scenarios: on the one hand, the scenario where the Court finds the Purchase Agreement to be a loan and, on the other hand, the scenario where the Purchase Agreement is a sale:

> ***To the extent that the MSA imposes usurious interest***, the interest component of the MSA is void under California law . . . ***If DLP purchased the Pre-Petition Accounts*** in a manner that did not reduce the DLP Borrower's obligations to DLP, then the sale of the Pre-Petition Accounts did not provide reasonably equivalent value to the Counterclaim Plaintiffs.

Counterclaim ¶¶ 105-28 (emphasis added). This demonstrates that the fraudulent transfer claim can survive independent of any declaratory judgment finding the transaction to be a

loan or a sale. Additionally, it appears the Defendants do not seek to attack any purported transfers independently (there were none), but rather to attack the entire transaction on the basis that the Defendants, allegedly, received "less than reasonably equivalent value" in exchange for incurring the "***obligation***."[3] 11 U.S.C. § 548(a)(1)(B) (emphasis added); Counterclaim ¶¶ 104–128. Accordingly, the nature of the transaction is wholly irrelevant because the Defendants will only need to demonstrate that that an **obligation** was incurred by the Defendants as a result of which they received less than reasonably equivalent value, not that there was a "transfer of an interest of the debtor in property" every time a transfer occurred under the Purchase Agreement (which the Defendant cannot prove because DLP already owned the property being transferred at the time of the transfers pursuant to express terms of the Purchase Agreement). 11 U.S.C. § 548(a)(1)(B).

As such, Counts III, IV, and V of the Counterclaim must be dismissed pursuant to Federal Rule 12(b)(6) because they fail to state a claim upon which relief can be granted.

**B. The Defendants stipulated that the Purchase Agreement is a sale and released the claim in the Stipulation of Settlement.**

In Section II(E) of the Stipulation of Settlement, the Defendants released all claims against DLP, including the claim that the transaction was a loan or that usury laws were somehow violated. The release states, in relevant part, that the Defendants were released the following:

> ….any and all claims, actions, causes of action, suits, debts, dues, sums of money, accounts, interests, reckonings, bonds, bills, specialties, covenants, contracts, controversies, promises, agreements, variances, trespasses, damages, judgments, extents, executions, demands, obligations, costs, expenses, losses, exposures and liabilities whatsoever, of every name and nature, both in law and equity, known or unknown, which against the DLP Releasees, any or all of the Defendants Releasors now have, ever had or shall later have, arising from, upon or by reason of any matter, cause or thing

[3] This is the only reasonable explanation considering that no transfer occurred pursuant to the Purchase Agreement, as the Defendants did not make a single remittance under the Purchase Agreement. (Dkt. No. 1: Complaint ¶ 15).

> occurring at any time from the beginning of the world to the date hereof.

(Dkt. No. 8: **Exhibit 3** at p. 3, § II.E.)

The language of the release demonstrates the Defendants released any claim that the Purchase Agreement was a loan. Furthermore, the Defendants expressly stipulated that the transaction was a sale. (*Id.* at Recitals). As such, the Defendants are barred from asserting that the Purchase Agreement is anything other than a sale under the doctrines of judicial estoppel, res judicata, and because of the pre-petition release of all claims against DLP.

First, the Defendants are estopped from arguing that the transaction is a loan. Judicial estoppel bars a party from asserting a claim when (1) the claim is "clearly inconsistent" with an earlier position taken by the party, (2) the party "succeeded in persuading a court to accept" the earlier position such that accepting the later position "would create the perception that either the first or the second court was misled," and (3) the party would "derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001).

Here, the first and third factors are satisfied because the Defendants are seeking a determination that the Purchase Agreement is a loan when they expressly assumed the opposite position in the New York Action, necessarily seeking an unfair advantage against DLP in these bankruptcy proceedings. The second factor is satisfied because the New York state court accepted and relied on the Defendants' stipulation when it entered the Judgment. (Dkt. Nos. 7 & 8: Complaint - **Exhibits 3 & 4**).

Second, the doctrine of res judicata provides an additional basis to dismiss the Counterclaim based on the theory that the Purchase Agreement is a loan. Under New York law, the doctrine of res judicata posits that

> a party may not litigate a claim where a judgment on the merits exists from a prior action between the same parties involving the same subject matter. ***The rule applies not only to claims actually litigated but also to claims that could have been raised in the prior litigation***.

> The rationale underlying this principle is that a party who has been given a full and fair opportunity to litigate a claim should not be allowed to do so again. Additionally, under New York's transactional analysis approach to res judicata, ***once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy***.

*In re Hunter*, 4 N.Y.3d 260, 269-70 (2005) (internal quotation marks and citations omitted); *see also, Holcombe v. Hosmer*, 477 F.3d 1094, 1097 (9th Cir. 2007) (stating that the law of the state that entered the final judgment must be applied for res judicata purposes). As such, because a final judgment was entered and the Defendants litigated and/or had an opportunity to litigate the nature of the transaction in the New York Action, the Defendants are now precluded from relitigating all issues arising from the Purchase Agreement.

Third, the Defendants are barred from asserting the Purchase Agreement is a loan because they released all past and future claims against DLP arising from the Purchase Agreement. "If a cause of action is released by the debtor prepetition, it will not be a 'legal or equitable interest of the debtor in property as of the commencement of the case'" *In re ICPW Liquidation Corp.*, 600 B.R. 640, 659 (Bankr. C.D. Cal. 2019). In *In re ICPW Liquidation Corp.*, the Bankruptcy Court for the Central District of California found that pre-petition releases of "prepetition causes of action" are enforceable in bankruptcy because they and are not equivalent to "*express* waiver of statutory rights and protections under the Bankruptcy Code or even the *effective* waiver of such rights and protections," even if the result is that certain assets do not become part of the bankruptcy estate. *In re ICPW Liquidation Corp.,* 600 B.R. 663 (emphasis in original). Here, the Defendants released any claim arising from the Purchase Agreement, including recharacterization of the transaction as a loan. Recharacterization is a state law remedy that does not affect the statutory rights of the Defendants in bankruptcy. Thus, the Defendants' pre-petition release of all claims against DLP is valid and enforceable, preventing the Defendants from asserting claims that the transaction is a loan.

Because Counts III, IV, and V rely on arguments that the Defendants are barred from making, the claims are not viable nor plausible and must be dismissed pursuant to Federal Rule 12(b)(6).

**3.3. Count V must be dismissed because the claim is barred by applicable law and the release in the Stipulation of Settlement.**

In Count V of the Counterclaim, the Defendants asks this Court for a determination that California usury law applies to the Purchase Agreement and, consequently, that the Purchase Agreement is void and unenforceable because it purportedly violates California usury laws. Even if a determination of the nature of the transaction was relevant to the Defendants' substantive cause of action (it is not), Count V must be dismissed because (1) the doctrines of judicial estoppel and res judicata bar any claims arising from the Purchase Agreement, (2) the Defendants released the claim in the Stipulation of Settlement, and (3) New York law, the law governing the Purchase Agreement, bars the Defendants' claim as a matter of law.

**3.3.1. The Defendants are barred from bringing the claim under the doctrine of judicial estoppel, res judicata, and because they released all claims against DLP.**

As previously demonstrated, Defendants are barred from asserting that the Purchase Agreement is a loan and from relitigating any issues arising from the transaction under the doctrines of judicial estoppel and res judicata. Additionally, the Defendants released all claims against DLP in the Stipulation of Settlement. This includes any claim that California usury laws are applicable and that the Purchase Agreement violates California usury laws. As such, Count V is not plausible as a matter of law because it is barred by the doctrines of judicial estoppel, res judicata and the release in the Stipulation of Settlement.

**3.3.2. New York law, not California law, governs the transaction.**

Even if the Defendants were permitted to relitigate the nature of the transaction (they are not as a matter of law), Count V is implausible on its face because it is New

York law, not California law, that governs the Purchase Agreement by its express terms. (Dkt. No. 6: **Exhibit 1** at ECF p. 10 of 25, ¶ II.5). The Defendants admit this fact in the Counterclaim in Count VII that New York law governs the Purchase Agreement and attempts to analyze the Purchase Agreement under New York law. *See* Counterclaim ¶¶ 73–76.3.

But even if the Court decided to engage in a choice of law analysis, it would find that New York law governs the Purchase Agreement. "In a bankruptcy case, the court must apply federal choice of law rules [citation]. Federal choice of law rules follow the approach of the Restatement (Second) of Conflict of Laws." *Liberty Tool v. Vortex Fishing Sys. (in Re Vortex Fishing Sys.)*, 277 F.3d 1057, 1069 (9th Cir. 2001). California law also follows the Restatement Second of Conflict of Laws.

Under California law, contractual choice of law provisions are generally enforced because "California law reflects a strong public policy favoring enforcement of freely negotiated choice-of-law clauses." *Colaco v. Cavotec SA*, 25 Cal.App.5th 1172, 1188 (2018). To resolve conflicts of law, California has adopted the approach of the Restatement Second of Conflict of Laws:

> Provided the parties or their transactions have a substantial relationship to the state whose laws they selected, or some other reasonable basis for the parties' choice of law exists, California courts will enforce a choice-of-law provision unless (1) the chosen state's law conflicts with a fundamental public policy of the state whose law otherwise would apply, **and** (2) the other state "has a 'materially greater interest than the chosen state in the determination of the particular issue."

*Id.* (quoting *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal.4th 459, 466 (1992) (emphasis added)). The Restatement's approach counsels that a fundamental tenet of contract law is "to protect the justified expectations of the parties and to make it possible for them to foretell with accuracy what will be their rights and liabilities under the contract," especially "in multistate transactions by letting the parties choose the law to govern the validity of the contract and the rights created thereby." *Id.* (quoting Rest. 2d Conf. of

Laws, § 187, com. e, p. 565).

Here, the Defendants have failed to plead allegations sufficient to show that California law should govern the transaction instead of New York law. In fact, the Defendants themselves admit that DLP has a reasonable relationship with New York because DLP is a New York company. *See* Counterclaim ¶ 87 (admitting the existence of "DLP's connections to New York"). When one of the parties to the transaction is incorporated in, domiciled in, or has a principal place of business in the chosen state (as is the case here), that alone is sufficient to establish a substantial relationship with the chosen state. *See, e.g.*, *Hambrecht & Quist Venture Partners v. Am. Med. Internat., Inc.*, 38 Cal.App.4th 1532, 1545–46, (1995) ("[T]he parties to a contract have a substantial relationship with the chosen state if one or more of them is incorporated there . . . . If one of the contracting parties is incorporated in the chosen state, then *all* of the contracting parties have a substantial relationship to that state for choice-of-law purposes"); *Hughes Elecs. Corp. v. Citibank Delaware*, 120 Cal. App. 4th 251, 258 (2004) (holding that parties had a reasonable relationship with the chosen state because one of them had a principal place of business in that state).

Having established the parties to the Purchase Agreement have a reasonable relationship with New York as a result of DLP's connections to New York, the Court would then have to determine whether there is a conflict with a fundamental policy of California **and** whether California has a materially greater interest than New York in the adjudication of the dispute such that the choice of law would be unenforceable. *Colaco*, 25 Cal.App.5th at 1188. Even in this respect, the Defendants fail to allege sufficient facts to show that California law is applicable, only stating in a conclusory manner that "California has a materially greater interest" in the dispute. *See* Counterclaim ¶ 89. However, DLP contends that New York law is applicable pursuant to the parties' choice of law because California does not have a materially greater interest than New York in adjudicating the dispute.

In *In re Powerburst Corp.*, the Bankruptcy Court for the Eastern District of

California upheld a choice of law provision establishing New York law as the governing law in an action for usury when (1) the contracts were prepared in New York, (2) some of the contracting parties resided in New York, (3) the contracts were executed in New York, (4) the defendants gave powers of attorney to the New York parties to enforce the contracts in New York, and (5) the defendants were sophisticated parties which knew or should have known that the contracts provided for New York law. *In re Powerburst Corp*., 154 B.R. 307, 310–12 (Bankr. E.D. Cal. 1993). The same considerations apply here, where (1) the Purchase Agreement was prepared by DLP in New York, (2) DLP is domiciled in New York, (3) the Purchase Agreement was executed in New York, (4) the Defendants gave powers of attorney to DLP to enforce the Purchase Agreement under New York law, and (5) the Defendants are sophisticated parties which were expressly informed that New York law would apply to the Purchase Agreement.

Furthermore, in *Shannon-Vail Five Inc. v. Bunch*, the Ninth Circuit upheld the parties choice of law, despite the fact that Nevada (the chosen state) did not have ***any*** usury laws, finding that "the lack of a usury law does not mean that Nevada has a less substantial concern than California about interest rates; rather, it appears to reflect a choice to favor individual contract decisions and the free flow of capital." *Shannon-Vail Five Inc. v. Bunch*, 270 F.3d 1207, 1213 (9th Cir. 2001). The Ninth Circuit upheld the Nevada choice of law provision because of the transaction's connection with Nevada and because the borrower had to repay the loan in Nevada. *Id.* This case demonstrates that New York, like Nevada, does not automatically have a lesser interest than California in adjudicating the dispute just because usury cannot be asserted affirmatively in New York.

Because the Purchase Agreement expressly provides New York law governs the transaction, and considering the authorities cited above, New York law, not California law, governs the transaction and, as such, Count V of the Counterclaim must be dismissed pursuant to Rule 12(b)(6).

**3.3.3. Affirmative usury claims are barred under New York law.**

Putting aside the fact that the transaction is not a loan to which usury laws are even applicable, it is well settled that under New York law a corporation may only assert usury as a defense to an action seeking repayment of a loan, not as an affirmative claim for relief. *See, e.g.*, *Naycation Travel, Inc. v. Glob. Merch. Cash, Inc.*, 141 N.Y.S.3d 319 (2d Dep't 2021) (affirming summary judgment dismissal of usury based affirmative claim); *Adar Bays, LLC v. GeneSYS ID, Inc.*, 37 N.Y.3d 320, 179 N.E.3d 612 (2021) (reaffirming that usury is an affirmative defense to repayment on a note, and that loans exceeding criminal usury rates are void ab initio-but still not a basis for an affirmative claim); *Streamlined Consultants, Inc. v. EBF Holdings LLC*, No. 21-CV-9528 (KMK), 2022 WL 4368114 (S.D.N.Y. Sept. 20, 2022) (holding that New York law prohibits a corporation from asserting usury as a basis for affirmative relief; usury may be raised only defensively in response to collection efforts).

New York courts consistently dismiss claims for declaratory relief based on alleged usury because it is a request for affirmative relief which is barred under New York law. *See, e.g.*, *Collins v. MCA Receivables, LLC*, 2024 WL 246111, at *5 (S.D.N.Y. Jan. 23, 2024) (dismissing a claim for declaratory judgment based on alleged usury); *Powercap Partners LLC v. Beaux Equities LLC*, 179 N.Y.S.3d 894 (Sup. Ct. 2023) (holding that the corporate defendants could "not bring an action seeking a declaratory judgment that the subject loans violate criminal usury law"); *Haymount Urgent Care PC v. GoFund Advance, LLC*, 609 F. Supp. 3d 237, 254 (S.D.N.Y. 2022) ("New York courts have uniformly…prohibited corporations from bringing affirmative claims or counterclaims alleging criminal usury and seeking to invalidate an agreement"); *Scantek Med., Inc. v. Sabella*, 582 F. Supp. 2d 472 (S.D.N.Y. 2008) (dismissing a claim for declaratory judgment based on alleged usury).

Additionally, even if the Purchase Agreement was a loan to which usury laws applied (it is not), the Purchase Agreement is expressly exempt from New York's usury laws. Pursuant to N.Y. Gen. Oblig. Law § 5-501(b)(6), "No law regulating the maximum

rate of interest . . . shall apply to any loan or forbearance in the amount of two million five hundred thousand dollars or more." Thus, loans exceeding $2.5 million are completely exempt from usury laws in New York (the Purchase Agreement was not a loan in the first instance).

Here, Defendants allege in the Counterclaim that the Purchase Agreement involved a loan of $1.2 million per week, for a total of approximately $21 million, according to the "term" alleged by the Defendants. Counterclaim ¶¶ 76.3 & 91. This is well above the statutory ceiling and, as such, even if the Purchase Agreement was a loan (it is not), it would be exempt from New York's usury law. *See* N.Y. Gen. Oblig. Law § 5-501(b)(6).

In Count V the Defendants do precisely what controlling case law and the New York usury statute forbids: they invoke usury to seek affirmative relief and allege a loan for an amount well beyond the statutory ceiling. Such a theory is foreclosed as a matter of law. Additionally, like the other claims analyzed, Defendants released their claim that the Purchase Agreement violated usury laws when it executed the Stipulated of Settlement. As such, Count V must be dismissed because there is no such claim that can be brought by the Defendants under New York law.

**3.4. Count VII must be dismissed because 11 U.S.C. § 506 does not apply to sales and for lack of subject matter jurisdiction.**

In Count VII, Defendants request a determination that DLP holds unsecured status and that its lien should be avoided pursuant to 11 U.S.C. § 506(a) and (d). However, the Court cannot determine lien priority without first determining whether the funds are property of the estate, which is why DLP initiated this Adversary Proceeding. The Purchase Agreement giving rise to DLP's security interest is a sale, and the Defendants are barred from asserting otherwise pursuant to the doctrines of judicial estoppel and res judicata. They are also barred because Defendants released all claims against DLP. As such, § 506 is inapplicable to the Purchase Agreement because the funds are not property of the estate as defined in § 541. 11 U.S.C. § 506(a)(1) (limiting applicability to allowed claims "of a creditor secured by a lien on property in which the estate has an interest").

Furthermore, the mere fact that DLP obtained a judgment does not vitiate the security interest DLP acquired and perfected when it entered into the Purchase Agreement with the Defendants. In this respect, UCC § 9-601 states, in relevant parts, as follows:

> (a) After default, a secured party . . .
>
> (1) may reduce a claim to judgment, foreclose, or otherwise enforce the claim, security interest, or agricultural lien by any available judicial procedure . . . .
>
> (c) The rights under subsections (a) and (b) are cumulative and may be exercised simultaneously . . . .
>
> (e) [Lien of levy after judgment.] If a secured party has reduced its claim to judgment, the lien of any levy that may be made upon the collateral by virtue of an execution based upon the judgment relates back to the earliest of:
>
> (1) the date of perfection of the security interest or agricultural lien in the collateral;
>
> (2) the date of filing a financing statement covering the collateral; or
>
> (3) any date specified in a statute under which the agricultural lien was created.

The quoted language demonstrates that reducing a claim to judgment does not terminate a security interest. Rather, the judgment supplements the security interest with an additional execution lien that dates to the original perfection date. UCC § 9-601(e).

Importantly, Count VII should be dismissed because the Court may lack jurisdiction to adjudicate this claim altogether. In a case like this, where the value of the collateral is already known, Count VII would only be seeking an advisory opinion in the absence of an actual case or controversy. The value and extent of DLP's collateral have been stipulated by the parties after extensive negotiation. Where the value of the collateral is already established, as it is here, the Defendants' claim asking the Court to declare that DLP is unsecured and to strip its lien may lack a concrete controversy to be adjudicated, turning Count VII into a request for an advisory opinion based on undisputed facts. As such, DLP contends that the Court lacks subject matter jurisdiction to adjudicate Count VII of the Counterclaim.

Because § 506 does not apply to the transaction at issue, and because the Court lacks subject matter jurisdiction to adjudicate cases where no controversy exists, Count VII should be dismissed.

**3.5. Counts VIII and IX should be dismissed because they are implausible as a matter of law and the Defendants lack standing to bring the claims.**

In Count VIII, Defendants seek to avoid DLP's lien under 11 U.S.C. § 548(a). Count IX is dependent on the success of the avoidance action as it seeks a judgment preserving and transferring DLP's lien to the bankruptcy estates under 11 U.S.C. §§ 550 and 551.

As an initial matter, Paragraphs 105 through 121 of Count VIII should be dismissed because the relief sought in those paragraphs is based on the assumption that the transaction is a loan despite the fact that the Defendants are barred from asserting that the Purchase Agreement is anything other than a sale pursuant to the release in the Stipulation of Settlement and the doctrines of judicial estoppel and res judicata. Because the nature of the transaction is not an issue that the Defendants may litigate or dispute, Count VIII should be dismissed. That portion of the Defendants' § 548 claim, which is based on the theory that the transaction is a usurious loan, is implausible on its face and thus fails to state a claim upon which relief can be granted under Federal Rule 12(b)(6).

The remaining portions of Count VIII must also be dismissed on two distinct grounds. First, the Defendants' conclusory allegation that that they did not receive reasonably equivalent value as a result of the transaction, absent an explanation of why the value is deemed less than reasonably equivalent, is not sufficient to make the claim plausible. Second, the Defendants lack Article III standing to pursue this claim as the Defendants suffered no injury.

"Reasonably equivalent value ordinarily means 'similar to fair market value'" at the time the transaction occurred. *In re Viscount Air Servs., Inc.*, 232 B.R. 416, 435 (Bankr. D. Ariz. 1998) (quoting *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 545 (1994)). The Defendants allege that the Debtors did not receive reasonably equivalent

value in exchange for incurring the obligation because the Defendants received $1.2 million and had to remit $1.8 million in exchange for it. Counterclaim ¶ 110. The Defendants fail to allege why they believe that the value received was less than reasonably equivalent at the time the transaction was entered into based on the market value of the accounts sold. Such formulaic and conclusory allegations are insufficient to render the claim plausible and are subject to dismissal. *In re Hydrogen, L.L.C.*, 431 B.R. 337, 353 (Bankr. S.D.N.Y. 2010) (dismissing § 548(a)(1)(B) claim because the complaint did not allege facts sufficient to support the allegation that the debtor received less than reasonably equivalent value); *In re Caremerica, Inc.*, 409 B.R. 346, 354 (Bankr. E.D.N.C. 2009) (dismissing § 548(a)(1)(B) because the complaint only contained formulaic recitations of the statutory elements of the claim). As such, Count VIII and Count IX, which relies on Count VIII, must be dismissed.

But even if the Court found that the Defendants' claim is plausible (it is not), the Court would have to dismiss Count VIII and, consequently, Count IX, for lack of subject matter jurisdiction. Specifically, the 11 U.S.C. § 548 claim cannot stand because the Defendants do not have Article III standing to bring it. A plaintiff has Article III standing when he can show "i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *In re O'Gorman*, 115 F.4th 1047, 1055 (9th Cir. 2024) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). Here, the elements of Article III standing are not satisfied because the Defendants have not suffered a concrete and particularized injury by entering into the transaction with DLP. In fact, the Defendants did not suffer an injury at all – if anything, they benefitted from the transaction as they received more than one million dollars from DLP without making a single remittance to DLP, a fact that the Defendants openly admit in the Counterclaim. Counterclaims ¶ 15. "If the plaintiff does not claim to have suffered an injury that the defendant caused and the court can remedy, there is no case or controversy for the federal court to resolve." *In re O'Gorman*, 115 F.4th at 1055. Under these

circumstances, there is no set of facts the Defendants could possibly allege to show that they suffered sufficient injury to obtain Article III standing to bring this claim.

As such, Counts VIII and IX must be dismissed for failure to state a claim upon which relief can be granted pursuant to Federal Rule 12(b)(6) and for lack of subject matter jurisdiction pursuant to Federal Rule 12(b)(1).

**4. Conclusion.**

For the foregoing reasons, DLP respectfully requests that the Court grant the Motion and dismiss the Defendants' Counterclaim.

Date: July 9, 2026

KAMINSKI LAW, PLLC

By: */s/ Shanna M. Kaminski*

Shanna M. Kaminski
*Admitted pro hac vice*

Attorneys for Plaintiff & Counter-Defendant
DLP FUNDING, LLC

-and-

SALVATO BOUFADEL LLP

By: */s/ Joseph Boufadel*

Joseph Boufadel

Local Counsel for Plaintiff & Counter-Defendant
DLP FUNDING, LLC