24

GREGORY M. SALVATO (SBN 126285)
Gsalvato@salvatoboufadel.com
JOSEPH BOUFADEL (SBN 267312)
Jboufadel@salvatoboufadel.com
SALVATO BOUFADEL LLP
355 South Grand Avenue, Suite 2450
Los Angeles, California 90071
Telephone: (213) 423-0931

Local Counsel for Plaintiff and Counter-Defendant
DLP FUNDING LLC

**UNITED STATES BANKRUPTCY COURT**

**EASTERN DISTRICT OF CALIFORNIA**

**FRESNO DIVISION**

| | |
|---|---|
| In re:<br><br>HRONIS, INC., a California corporation, et al.,<br>Debtors-in-Possession. | Case No. 1:26-bk-10978<br>(Jointly Administered)<br><br>Chapter 11<br><br>Adv. Proc. No. 1:26-ap-01017 |
| DLP FUNDING LLC, a New York limited liability company;<br><br>Plaintiff,<br><br>v.<br><br>HRONIS, INC., a California corporation;<br>HRONIS FRUIT COMPANY LLC, a California limited liability company;<br>HRONIS RANCH, LLC, a California limited liability company;<br>HRONIS CITRUS, LLC, a California limited liability company; and<br>DOES 1 through 20, inclusive,<br>Defendants. | DCN: SB-2<br><br>**Reply in support of Plaintiff and Counter-Defendant DLP Funding, LLC's Motion to Dismiss Defendants and Counter-Claimants' Amended Counterclaims**<br><br><u>Hearing Date</u>:<br>Date: October 28, 2026<br>Time: 11:00 a.m. PST<br>Place: Courtroom 13 (5th Floor)<br>2500 Tulare Street<br>Fresno, CA 93721<br><br>Judge: Hon. René Lastreto II |
| AND RELATED COUNTERCLAIMS. | |

Continuation of Caption:

SHANNA M. KAMINSKI (P74013)
*Admitted Pro Hac Vice*
KAMINSKI LAW, PLLC
PO Box 247
Grass Lake, Michigan 49240-0247
Telephone: (247) 462-7111
skaminski@kaminskilawpllc.com

Attorneys for Plaintiff and Counter-Defendant
DLP FUNDING LLC

# TABLE OF CONTENTS


1. Preliminary Statement. .......... 8

2. Counts I through V are redundant of DLP's claim for relief and of Conterra's affirmative defenses and should be dismissed. .......... 10

   2.1. Conterra concedes that Counts I through IV seek only the converse of DLP's claim, which removes any doubt that they are redundant. .......... 10

   2.2. Each declaratory count duplicates a defense Conterra has already pleaded. .......... 10

3. The Settlement Stipulation bars Counts I through V as a matter of contract law. .......... 12

   3.1. The Settlement Stipulation is a binding contract governed by New York law. .......... 12

   3.2. The Debtors stipulated that they sold their accounts receivable to DLP and released every controversy concerning the nature of the transaction. .......... 13

   3.3. DLP's release does not bar this proceeding because DLP is doing exactly what the Settlement Stipulation permits: enforcement. .......... 16

4. The Judgment did not merge or extinguish DLP's ownership of the accounts (Count II). .......... 17

5. Claim preclusion and judicial estoppel independently bar Counts III through V. .......... 18

   5.1. The New York judgment is entitled to full claim-preclusive effect, including the effect New York gives consent and default judgments. .......... 18

   5.2. Judicial estoppel bars the Debtors' assignee from repudiating the stipulated sale. .......... 19

6. Count V fails because New York law governs and bars an affirmative usury claim. .......... 21

7. Counts VII through IX should be dismissed. .......... 22

   7.1. Count VII fails because Bankruptcy Code § 506 applies only to property in which the estate has an interest, and the counterclaim assumes the very conclusion it must establish. .......... 22

   7.2. Count VIII's value theory rests on no facts. .......... 23

7.3. Count IX falls with Count VIII. .................................................. 23

8. Conclusion. ............................................................................................ 23

# TABLE OF AUTHORITIES

**Federal Cases** **Page(s)**

*Ashcroft v. Iqbal*
556 U.S. 662 (2009) .......... 23

*Gov't Emps. Ins. Co. v. Dizol*
133 F.3d 1220 (9th Cir. 1998) .......... 11

*Hamilton v. State Farm Fire & Casualty Co.*
270 F.3d 778 (9th Cir. 2001) .......... 19, 21

*Helfand v. Gerson*
105 F.3d 530 (9th Cir. 1997) .......... 20

*New Hampshire v. Maine*
532 U.S. 742 (2001) .......... 19

*Rissetto v. Plumbers & Steamfitters Local 343*
94 F.3d 597 (9th Cir. 1996) .......... 20

*Sofi Classic S.A. de C.V. v. Hurowitz*
444 F.Supp.2d 231 (S.D.N.Y. 2006) .......... 16

*Southmark Corp. v. FDIC*
1998 U.S. App. LEXIS 40474 (5th Cir. Apr. 20, 1998) .......... 17

*Stickrath v. Globalstar, Inc.*
2008 U.S. Dist. LEXIS 95127 (N.D. Cal. May 13, 2008) .......... 10

*Westinghouse Credit Corp. v. D'Urso*
371 F.3d 96 (2d Cir. 2004) .......... 17

**New York State Cases**

*Centro Empresarial Cempresa S.A. v. América Móvil, S.A.B. de C.V.*
17 N.Y.3d 269 (2011) .......... 12, 14, 15

*Classic Autos. v. Oxford Res. Corp.*
204 A.D.2d 209 (App. Div. 1st Dept. 1994) .......... 18, 19

*Corrigan v. Breen*
241 A.D.2d 861 (App. Div. 3rd Dept. 1997) .......... 12

## TABLE OF AUTHORITIES
**(Continued)**


*Greenfield v. Philles Records*
98 N.Y.2d 562 (2002) .......... 9

*Hallock v. State*
64 N.Y.2d 224 (1984) .......... 9, 12, 13, 14, 15, 16

*Henry Modell & Co. v. Minister, Elders & Deacons of Reformed Protestant Dutch Church*
68 N.Y.2d 456 (1986) .......... 19

*LG Funding, LLC v. United Senior Props. of Olathe, LLC*
181 A.D.3d 664 (App. Div. 2nd Dept. 2020) .......... 15, 21

*McCoy v. Feinman*
99 N.Y.2d 295 (2002) .......... 16

*O'Brien v. City of Syracuse*
54 N.Y.2d 353 (1981) .......... 18

*Paycation Travel, Inc. v. Global Merchant Cash, Inc.*
192 A.D.3d 1040 (2d Dep't 2021) .......... 22

*Silverman v. Leucadia, Inc.*
156 A.D.2d 442 (App. Div. 2nd Dept. 1989) .......... 18

*W.W.W. Assocs., Inc. v. Giancontieri*
77 N.Y.2d 157 (1990) .......... 13

**Federal Statutes & Rules**

28 U.S.C.
§ 1738 .......... 18

Bankruptcy Code
§ 506 .......... 9, 22, 23
§ 506(d) .......... 22
§ 541(a)(1) .......... 10, 14
§ 548 .......... 9, 12, 23
§ 550 .......... 9, 23
§ 551 .......... 9, 23

## TABLE OF AUTHORITIES
**(Continued)**

**New York State Statutes**

N.Y. Gen. Oblig. Law § 5-501 .......... 21

N.Y. Gen. Oblig. Law § 5-521 .......... 21

N.Y. Penal Law § 190.40 .......... 21

N.Y. U.C.C. § 9-318(a) .......... 17

N.Y. U.C.C. § 9-406(a) .......... 17

N.Y. C.P.L.R. 2104 .......... 12

**REPLY IN SUPPORT OF**

**MOTION TO DISMISS AMENDED COUNTERCLAIMS**

Plaintiff and Counter-Defendant DLP Funding, LLC's ("**DLP**" or "**Plaintiff**"), by and through its undersigned counsel, for its Reply to Defendant's Response in Opposition to Plaintiff's Motion to Dismiss Defendants' Amended Counterclaims, states as follows:

**1. Preliminary Statement.**

Conterra's opposition confirms the central basis for dismissal. Its lead argument is that Counts I through IV are the "converse" of Plaintiff's own claim for relief: DLP asks the Court to declare that the Disputed AR is not property of the estate and Counts I through IV ask the Court to declare that it is. (Opposition at 10.) Conterra confirms that the competing declarations concern the same ownership question, which DLP's complaint already places before the Court. A counterclaim that seeks nothing more than the mirror image of the plaintiff's claim adds no issue, no remedy, and no party to the case. It is redundant, and it should be dismissed, or, at a minimum, stricken to the extent it merely duplicates issues already joined. DLP never argued that an adversary proceeding is the wrong vehicle to decide ownership of the Disputed AR. The adversary proceeding is the right vehicle and is pending.

What Conterra adds beyond the mirror image fares no better. Its UCC Article 9 priority theory is an intercreditor dispute between two non-debtors that, even if Conterra prevailed on it, would not return a sold account to the estate. Conterra's attempt to recharacterize the Merchant Sales Agreement ("**MSA**") as a usurious loan runs headlong into the Settlement Stipulation, in which the Debtors, represented by counsel and in exchange for the discontinuance of the New York Action, stipulated that they sold their accounts receivable to DLP and released every controversy concerning the transaction. Conterra holds only the Debtors' rights. It takes those rights subject to the Debtors' own stipulation and release.

Conterra's response is to turn the mutual release against DLP. It argues that

because DLP's release uses the same language as the Debtors, it extinguished DLP's ownership of the very accounts the Debtors stipulated they sold. (Opposition at 13.) DLP does not ask the Court to disregard any provision or to read the release in isolation. The provisions must be read together, giving effect to the Debtors' express stipulation that they sold the accounts, the release of claims arising from the transaction, and the provision preserving the Debtors' obligations under the agreement. (Stipulation ¶ E and at Recitals.) Read as a whole, the agreement supports DLP's position that the Debtors settled their dispute concerning the MSA's character while preserving DLP's right to enforce the agreement and the resulting judgment. *Hallock v. State,* 64 N.Y.2d 224, 230 (1984); *Greenfield v. Philles Records,* 98 N.Y.2d 562, 569 (2002).

Finally, Counts VII through IX depend on Conterra establishing that the Disputed AR is property in which the estate has an interest or that the MSA involved a transfer or obligation subject to avoidance. Count VII presupposes an interest of the estate in the accounts for purposes of Bankruptcy Code § 506, while Counts VIII and IX depend on establishing an avoidable transfer under Bankruptcy Code § 548 and the resulting remedies under §§ 550 and 551. Conterra cannot satisfy those requirements merely by disputing the MSA's characterization. As explained below, the Debtors expressly stipulated that they sold the accounts to DLP and released controversies arising from the transaction. Conterra must therefore establish the statutory elements of each counterclaim notwithstanding that stipulation; it cannot simply assume that the accounts belong to the estate or that the transaction is avoidable. Counts VII through IX should be dismissed to the extent they fail to plead those required elements.

**2. Counts I through V are redundant of DLP's claim for relief and of Conterra's affirmative defenses and should be dismissed.**

**2.1. Conterra concedes that Counts I through IV seek only the converse of DLP's claim, which removes any doubt that they are redundant.**

*Stickrath v. Globalstar, Inc.,* 2008 U.S. Dist. LEXIS 95127 (N.D. Cal. May 13, 2008) cautions against dismissing a counterclaim as redundant when it is unclear whether resolution of the main claim will also resolve the counterclaim. That concern does not warrant caution here because Conterra's own admissions answer that question. Conterra's opposition states that DLP's sole claim for relief seeks a declaration that the Disputed AR is not property of the estate, while Counts I through IV "seek the converse determination": that the Disputed AR is property of the estate and that DLP holds no ownership interest in it. (Opposition at 9-11.) Conterra further concedes that Counts I through IV are tethered not to Count VIII but to Bankruptcy Code § 541 and Bankruptcy Rule 7001, the precise provisions on which DLP's complaint is based. (*Id.*).

That concession is powerful evidence of redundancy. When the Court adjudicates DLP's claim, it will determine whether the Disputed AR is property of the estate. If the Court rules for DLP, Counts I through IV cannot obtain the contrary declarations they seek. If the Court rules for Conterra, Conterra obtains every declaration Counts I through IV request, through the denial of DLP's claim. There is no outcome of DLP's claim that leaves Counts I through IV with independent work to do.

**2.2. Each declaratory count duplicates a defense Conterra has already pleaded.**

The redundancy is not abstract. Each count restates a defense Conterra (Debtor) has already asserted in its answer (Adv. Dkt. No. 41):

| Counterclaim | Relief Sought | Already Pleaded As: |
|---|---|---|
| Count I | DLP released its MSA rights in the Settlement Stipulation | Second and Fourth Affirmative defenses of release, accord and satisfaction, and bar by settlement and judgment (Answer at p. 5.) |
| Count II | DLP's MSA rights merged into the judgment | Third Affirmative defense of merger and res judicata (Answer at p. 5.) |
| Count III | DLP did not purchase the Pre-Petition Accounts | Denial of Complaint to purchase and sale allegations |
| Count IV | The MSA is a disguised loan | Denial of Complaint to purchase and sale allegations |
| Count V | The MSA is usurious under California law | Eighth Affirmative defense that the MSA violates California usury law (Answer at p. 6.) |

The redundancy is concrete: Each of Counts I through V raises an issue already presented by DLP's claims, Conterra's denials, or Conterra's affirmative defenses. Courts in the Ninth Circuit may decline duplicative declaratory relief where it would serve no useful purpose in clarifying the parties' legal relations or would result in duplicative litigation. *Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 & n.5 (9th Cir. 1998) (en banc). Consistent with that principle, *Vanguard Dealer Services, LLC v. Cervantes* No. 2:21-cv-01121-JAD-EJY, order at 6 (D. Nev. June 6, 2023) dismissed a declaratory-relief counterclaim as entirely redundant of affirmative defenses because the issues would be adjudicated regardless. The same reasoning applies here: Dismissing the duplicative counts would not prevent Conterra from advancing its existing defenses, while retaining them would unnecessarily multiply the issues presented for adjudication.

Furthermore, Counts I and II are not salvaged by Count VIII, and Conterra no longer contends otherwise. DLP's Motion demonstrated that Counts I and II do not relate to the only substantive cause of action Conterra pleaded that is not already before the

Court. Conterra does not, however, identify an element of Bankruptcy Code § 548 that Counts I or II would resolve. It argues instead that those Counts are directed at the property of the estate question. That response reinforces the overlap with DLP's claim rather than identifying an independent issue arising under Bankruptcy Code § 548. The question of whether the sold AR is property of the estate is the subject of DLP's complaint, and Counts I and II are redundant of it to the extent they seek declarations that turn on the same ownership determination. For these reasons, Counts I through V should be dismissed as redundant to the extent they merely duplicate the issues and defenses already before the Court. The independent contractual, preclusion, and usury grounds addressed below provide additional grounds for dismissal of the applicable counts.

**3. The Settlement Stipulation bars Counts I through V as a matter of contract law.**

**3.1. The Settlement Stipulation is a binding contract governed by New York law.**

The Settlement Stipulation selects New York law. (Complaint at Exhibit 3: Stipulation ¶ K.) Under New York law, a stipulation of settlement is an independent contract subject to ordinary principles of contract interpretation. *Corrigan v. Breen*, 241 A.D.2d 861, 863 (App. Div. 3rd Dept. 1997). Such stipulations are "favored by the courts and not lightly cast aside," and a party seeking to avoid one must establish sufficient grounds to invalidate the agreement, such as fraud, collusion, mistake, or accident. *Hallock v. State of New York*, 64 N.Y.2d 224, 230 (1984); N.Y. C.P.L.R. 2104. Conterra alleges no such grounds in its Amended Counterclaims.

A valid release is binding according to its terms. Under New York law, a valid release bars claims within its scope, and the party seeking to avoid the release bears the burden of showing that it should be set aside. *Centro Empresarial Cempresa S.A. v. América Móvil, S.A.B. de C.V.*, 17 N.Y.3d 269, 276–79 (2011). There, the Court of Appeals affirmed dismissal of claims covered by a broad general release executed by sophisticated parties represented by counsel. *Id.* The same principles apply here: if the

Settlement Stipulation unambiguously resolves the issues raised by the Amended Counterclaims, the Court may enforce the agreement according to its terms.

Conterra argues that the "interplay" among the Stipulation's provisions presents a question of contract interpretation that cannot be resolved against it on a motion to dismiss. (Opposition at 12.) But the need to interpret provisions together does not, by itself, render an agreement ambiguous or preclude dismissal. Under New York law, whether a contract is ambiguous is a question of law for the Court. *W.W.W. Assocs., Inc. v. Giancontieri*, 77 N.Y.2d 157, 162–63 (1990). Where an agreement is complete, clear, and unambiguous on its face, the Court must enforce it according to the plain meaning of its terms and may not use extrinsic evidence to create an ambiguity. *Id.* at 163.

Here, DLP does not ask the Court to disregard any provision or interpret the release in isolation. Rather, the Stipulation must be read as a whole, giving effect to the Debtors' express stipulation that they sold the accounts, the release of claims arising from the transaction, and the provision preserving the Debtors' obligations under the agreement. Read together, these provisions support DLP's position the parties resolved their dispute concerning the MSA's character while preserving DLP's right to enforce the agreement and the resulting judgment. *Hallock,* 64 N.Y.2d at 230.

### 3.2. The Debtors stipulated that they sold their accounts receivable to DLP and released every controversy concerning the nature of the transaction.

Two provisions of the Settlement Stipulation control. First, the Debtors expressly stipulated they sold their accounts receivable to DLP under the MSA. (Stipulation at Recitals.) Second, the Debtors released DLP from all claims, actions, causes of action, and controversies of every kind, in law or equity, arising through the effective date of the stipulation. (Stipulation ¶ E.) By its terms, the release encompasses any controversy between the Debtors and DLP concerning the MSA, including whether the MSA was a sale or a loan.

Counts III, IV, and V are that controversy. Each asks the Court to declare that the

transaction the Debtors stipulated was a sale was in fact a loan, and Count V asks the Court to declare that the supposed loan was usurious. Each is a controversy about the nature of the MSA. Each arose before the Settlement Stipulation. Each is released.

The Settlement Stipulation does not eliminate the need for the Court to determine whether the Pre-Petition Accounts are property of the bankruptcy estate. Bankruptcy Code § 541(a)(1) includes in the estate the Debtors' legal and equitable interests in property as of the commencement of the bankruptcy case. Determining whether the Debtors retained an interest in the accounts therefore requires the Court to determine the nature and effect of the transaction under applicable nonbankruptcy law. But the fact that the Court must decide that issue does not mean Conterra may relitigate a controversy the Debtors previously settled. DLP's position is that the Settlement Stipulation supplies the controlling contractual evidence: the Debtors expressly stipulated they sold the accounts under the MSA and released claims and controversies within the scope of Paragraph E. The Court can consider and enforce those provisions while deciding DLP's claim.

New York law favors enforcement of settlement stipulations according to their terms and does not lightly permit them to be set aside. *Hallock,* 64 N.Y.2d at 230. Likewise, a valid release bars claims within its scope. *Centro Empresarial Cempresa S.A.*, 17 N.Y.3d at 276. And an assignee generally stands in the shoes of its assignor, subject to the equities and burdens attached to the assigned rights. Accordingly, to the extent Conterra asserts the Debtors' assigned rights, it takes those rights subject to applicable defenses and limitations arising from the Settlement Stipulation. The Stipulation does not prevent the Court from determining the nature of the transaction; rather, DLP argues that it prevents Conterra from asserting claims that the Debtors released or from treating the settled controversy as though the Stipulation did not exist.

Conterra argues that the Recital identifying the MSA as a sale of accounts receivable is merely a "label," because whether a transaction constitutes a sale or a loan depends on its economic substance. (Opposition at 14.) DLP does not dispute that general principle. When determining the character of a commercial transaction in the first

instance, courts examine its substance rather than the terminology the parties use. *LG Funding, LLC v. United Senior Props. of Olathe, LLC*, 181 A.D.3d 664, 665–66 (App. Div. 2nd Dept. 2020) (examining the agreement's reconciliation provision, term, and recourse upon bankruptcy to determine whether the transaction was a loan). But this case presents a different question. The issue is not simply whether the MSA's original designation as a "sale" controls; it is also what legal effect the parties' subsequent Settlement Stipulation has on their dispute over the transaction's character.

The Settlement Stipulation was not merely a label attached to the transaction when it originated. It was a negotiated resolution of an existing dispute, entered into after the New York Action commenced and in exchange for consideration, including discontinuance of that action and an adjustment of obligations. In the Stipulation, the Debtors expressly acknowledged that they sold the accounts and released claims and controversies within the scope of Paragraph E. (Stipulation Recitals, ¶ E.) Under New York law, settlement stipulations are binding agreements that courts generally enforce according to their terms. *Hallock,* 64 N.Y.2d at 230. Likewise, a valid release bars claims within its scope. *Centro Empresarial Cempresa S.A.*, 17 N.Y.3d at 276.

Accordingly, the question is not whether the word "sale," standing alone, conclusively determines the MSA's legal character. It is whether the Debtors' express stipulation and release, read together with the Agreement and according to their terms, resolved the controversy over the transaction and foreclose the claims Conterra now asserts. DLP submits that they do. Conterra cannot avoid the Settlement Stipulation merely by recasting the settled dispute as counterclaims alleging that the transaction was a loan. The Court should enforce the Settlement Stipulation according to its terms and reject any counterclaims that seek relief barred by the agreement.

Counts III through V thus seek declaratory determinations that overlap with the issue already presented by DLP's claim and that, to the extent they assert released claims, are barred by the Settlement Stipulation. The Court should dismiss those counts to the extent they seek relief duplicative of the existing dispute or contrary to the Stipulation's

enforceable terms.

**3.3. DLP's release does not bar this proceeding because DLP is doing exactly what the Settlement Stipulation permits: enforcement.**

Conterra argues that DLP's release, which mirrors the Debtors', extinguished DLP's interest in the accounts. (Opposition at 13.) The release itself answers that argument. DLP released the Debtors from all claims arising before the stipulation, but the release expressly provides that it "shall not release the DLP Releasees from their obligations under this agreement." (Stipulation ¶ E.) New York enforces such carve-outs as written.

This proceeding enforces those preserved obligations. A stipulation of settlement is a contract enforceable according to its terms, and courts will not disturb it absent fraud, collusion, mistake, duress, or unconscionability. *McCoy v. Feinman*, 99 N.Y.2d 295, 302 (2002); *Hallock*, 64 N.Y.2d at 230. Under the Settlement Stipulation, the Debtors agreed that they sold the accounts, agreed to pay, and consented to entry of judgment if they did not. They did not pay, and judgment was entered under the Stipulation's own default provision. Conterra itself concedes that DLP's remedy after default was "entry of the stipulated judgment . . . and enforcement of that judgment." (Opposition at 12:17-18.) That is precisely what DLP is doing. DLP seeks to collect the judgment, and only the amount of the judgment, from the accounts the Debtors agreed they sold. Because the bankruptcy filing froze the funds the account debtors were holding, DLP cannot collect from those accounts without a determination that they belong to DLP rather than the estate, and that determination must be made in an adversary proceeding. The determination is not a released claim. It is a means of enforcing the Settlement Stipulation that the release expressly preserves. Reading the release to bar enforcement of the stipulation would render the carve-out meaningless.

The authority on which Conterra relies confirms the point. In *Sofi Classic S.A. de C.V. v. Hurowitz*, 444 F.Supp.2d 231, 238 (S.D.N.Y. 2006), the court held that parties who affirm a settlement by obtaining and enforcing a judgment under it may not then

disaffirm the settlement. DLP disaffirms nothing; it enforces the Settlement Stipulation in its entirety. It is Conterra, as the Debtors' assignee, that seeks to keep the stipulation's benefits while repudiating the sale the Debtors agreed to.

In any event, DLP's release could not have returned the accounts to the Debtors. The release covers only what DLP held against the Debtors on that date. (Stipulation ¶ K.) Once sold, the accounts were no longer the Debtors' property pursuant to N.Y. U.C.C. § 9-318(a); they are debts owed by third-party account debtors, who must pay DLP. N.Y. U.C.C. § 9-406(a). A release of claims against the Debtors does not reconvey property they had already sold. *Southmark Corp. v. FDIC*, 1998 U.S. App. LEXIS 40474, at *12-13 (5th Cir. Apr. 20, 1998) (holding that a broad mutual release did not revest in the assignor an ownership interest previously transferred by assignment, if the assignment conveyed a present ownership interest). Conterra concedes as much: by its own account, "a release of claims does not convey property." (Opposition at 12:6)

Accordingly, the Court should reject Conterra's interpretation of the mutual release. The argument does not, however, eliminate the need to analyze the merger, claim-preclusion, and usury theories under their respective legal standards.

**4. The Judgment did not merge or extinguish DLP's ownership of the accounts (Count II).**

Count II asserts that DLP's rights under the MSA merged into the New York judgment, leaving DLP with no remedy other than enforcement of that judgment. As explained in Part II.D, DLP **is** enforcing the judgment.

In any event, merger of a contractual payment claim into a judgment does not, by itself, extinguish a separate ownership interest in property. When a contract claim is reduced to judgment, the contract ***debt*** merges into the judgment. *Westinghouse Credit Corp. v. D'Urso,* 371 F.3d 96, 102 (2d Cir. 2004). But DLP's interest in the Pre-Petition Accounts arose from the Debtors' transfer of those accounts under the MSA, not merely from the Debtors' payment obligations. Under New York U.C.C. § 9-318(a), a debtor that has sold an account retains no legal or equitable interest in the account sold. Thus, if the

MSA effected a sale, the subsequent judgment on the Debtors' payment obligations did not, merely by virtue of merger, revest ownership of the accounts in the Debtors.

Accordingly, Count II should be dismissed.

**5. Claim preclusion and judicial estoppel independently bar Counts III through V.**

**5.1. The New York judgment is entitled to full claim-preclusive effect, including the effect New York gives consent and default judgments.**

Under the Full Faith and Credit Act, this Court must give the New York judgment the same preclusive effect a New York court would give it. 28 U.S.C. § 1738. New York applies a transactional analysis: a valid final judgment bars future actions between the same parties on the same cause of action, and on all other claims arising out of the same transaction or series of transactions, even if based on different theories or seeking a different remedy. *O'Brien v. City of Syracuse*, 54 N.Y.2d 353, 357 (1981).

That rule is not limited to judgments entered after trial. New York recognizes the preclusive effect of consent judgments and judgments entered by default. *Silverman v. Leucadia, Inc.*, 156 A.D.2d 442, 443 (App. Div. 2nd Dept. 1989) (consent judgment); *Classic Autos. v. Oxford Res. Corp.*, 204 A.D.2d 209, 209 (App. Div. 1st Dept. 1994) (applying preclusion principles to claims asserted after a prior default judgment). The precise effect of the New York judgment here must be determined from the judgment and the Settlement Stipulation under which it was entered.

Conterra argues that the Debtors' failure to assert recharacterization and usury theories in the New York Action does not bar those claims because New York has no compulsory counterclaim rule. (Opposition at 15, citing *Henry Modell & Co. v. Minister, Elders & Deacons of Reformed Protestant Dutch Church*, 68 N.Y.2d 456 (1986).) But New York's permissive-counterclaim rule does not permit a party to bring a later claim that would impair rights or interests established in the prior action. As the Court of Appeals explained, the rule may preserve claims seeking separate relief that could have been asserted earlier, but it does not permit a party to remain silent and later pursue a

preexisting claim that would undermine rights established in the first action. *Henry Modell*, 68 N.Y.2d at 462 n.2.

That limitation applies here. In the Settlement Stipulation, the Debtors expressly stipulated that they sold their accounts receivable to DLP. (Stipulation Recitals.) They entered that agreement after the New York Action commenced, in exchange for DLP's agreement to discontinue the action and allow additional time for payment. When the Debtors failed to pay, judgment was entered pursuant to the Stipulation.

Counts III through V now seek to challenge the same transaction. Count III alleges that DLP did not purchase the accounts; Count IV alleges that the MSA was a disguised loan; and Count V seeks affirmative relief on the theory that the alleged loan was usurious. These theories existed when the Debtors entered the Settlement Stipulation. To the extent their success would negate rights established by the settlement and judgment, they are barred under *Henry Modell*. See 68 N.Y.2d at 462 n.2; *Classic Autos.*, 204 A.D.2d at 209.

**5.2. Judicial estoppel bars the Debtors' assignee from repudiating the stipulated sale.**

Judicial estoppel protects the integrity of the judicial process by preventing a party from gaining an advantage by taking one position and later asserting an incompatible position. *Hamilton v. State Farm Fire & Casualty Co.*, 270 F.3d 778, 782 (9th Cir. 2001). In determining whether judicial estoppel applies, courts consider whether the later position is clearly inconsistent with the earlier one, whether the party succeeded in persuading a court to accept the earlier position, and whether allowing the inconsistent position would give the party an unfair advantage or impose an unfair detriment on the opposing party. *New Hampshire v. Maine*, 532 U.S. 742, 750–51 (2001). These factors guide an equitable inquiry rather than impose a rigid test.

**The Debtors' stipulated position is inconsistent with Counts III through V.** In the Settlement Stipulation, the Debtors expressly stipulated that they sold their accounts receivable to DLP. (Stipulation Recitals.) Conterra now characterizes that stipulation as a

mere "label" and seeks declarations that the transaction was not a sale, but a loan, and that the alleged loan was usurious. (Opposition at 14.) Those positions are incompatible with the Debtors' express stipulation.

Nor does it matter that Conterra characterizes the sale provision as a legal conclusion rather than a factual admission. Judicial estoppel may apply to a party's stated position whether it is an expression of intention, a statement of fact, or a legal assertion. *Helfand v. Gerson,* 105 F.3d 530, 535 (9th Cir. 1997). The Debtors agreed to the sale characterization as part of a negotiated settlement of their dispute with DLP. Conterra, as their assignee, should not be permitted to use the rights it acquired from the Debtors to repudiate that position and obtain relief inconsistent with the settlement.

**The Debtors obtained a benefit by entering into the Settlement Stipulation.** Conterra argues that no court accepted the Debtors' position because the New York judgment was entered following their failure to pay, rather than after a judicial determination that the MSA was a sale. (Opposition at 15.) DLP does not contend that the judgment contains an express finding on the MSA's characterization. Rather, the relevant circumstances are that the Debtors entered a negotiated settlement expressly stipulating to the sale, DLP agreed to discontinue the New York Action and provide additional time for payment, and the Debtors obtained those benefits under the agreement. When the Debtors failed to pay, judgment was entered pursuant to the Stipulation.

In *Rissetto v. Plumbers & Steamfitters Local 343,* 94 F.3d 597, 604 (9th Cir. 1996), the Ninth Circuit held that a favorable settlement may constitute the success required for judicial estoppel, even without a judgment on the merits. Although the settlement in *Rissetto* had been approved by an administrative board, its reasoning supports considering the benefits obtained through a settlement rather than treating the absence of a merits determination as automatically dispositive. Here, the Court should consider the Debtors' stipulated position, the consideration they received, and the subsequent entry of judgment in determining whether the judicial-acceptance factor is satisfied.

At a minimum, these circumstances reinforce DLP's separate arguments that the

Settlement Stipulation and release bar Conterra from asserting claims inconsistent with the Debtors' agreement. The Court need not treat the Judgment as an adjudication of the MSA's character to enforce the parties' settlement according to its terms.

**Allowing Counts III through V would give Conterra an unfair advantage.** The Debtors obtained the benefit of DLP's agreement to discontinue the New York Action and allow additional time for payment after expressly stipulating that they sold the accounts. Conterra now seeks to deny that sale and claim the same receivables for the bankruptcy estate, notwithstanding the Debtors' prior agreement. Permitting Conterra to assert those inconsistent positions would allow it to retain the benefit of the settlement while repudiating the position on which that settlement was based.

Judicial estoppel exists to prevent parties from manipulating judicial proceedings in this manner. *Hamilton*, 270 F.3d at 782. Because Conterra asserts rights derived from the Debtors, the Court should not permit it to use those rights to obtain a position inconsistent with the Debtors' prior stipulation. The Court should therefore dismiss Counts III through V to the extent judicial estoppel applies.

**6. Count V fails because New York law governs and bars an affirmative usury claim.**

The Court need not resolve the parties' choice-of-law dispute to dismiss Count V. Under either New York or California law, usury requires a loan or forbearance of money. Cal. Const. art. XV, § 1; N.Y. Gen. Oblig. Law § 5-501; N.Y. Penal Law § 190.40. A genuine purchase of receivables is not a loan subject to usury laws. *LG Funding, LLC,* 181 A.D.3d at 665–66.

Count V therefore depends on Conterra's ability to recharacterize the MSA as a loan. For the reasons explained in Parts II and IV.B–C, DLP submits that the Settlement Stipulation and release, claim preclusion, and judicial estoppel foreclose that effort. Without a viable basis to treat the MSA as a loan, Count V fails.[1]

---

[1] Independently, New York law bars Count V as an affirmative usury claim. Under New

**7. Counts VII through IX should be dismissed.**

**7.1. Count VII fails because Bankruptcy Code § 506 applies only to property in which the estate has an interest, and the counterclaim assumes the very conclusion it must establish.**

Bankruptcy Code § 506(a)(1) provides that "(a)n allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property." Section 506(d) voids a lien only "(t)o the extent that a lien secures a claim against the debtor that is not an allowed secured claim." Bankruptcy Code § 506(d). Both provisions presuppose an estate interest in the collateral. Section 506 values the creditor's interest "in the estate's interest" in the property; where the estate has no interest, there is nothing for § 506 to value and no lien on estate property for § 506(d) to void.

Conterra responds that DLP's argument "assumes a conclusion that the Court may not reach at the pleading stage"" namely that the accounts are not property of the estate. (Opposition at 19.) The argument is backwards. DLP does not ask the Court to assume that the Disputed AR is outside the estate. DLP asks the Court to recognize that Count VII cannot be adjudicated until that question is decided. It is Count VII that assumes its conclusion: it asks the Court to value DLP's collateral and void DLP's lien as though the Disputed AR were already estate property.

The practical consequence is that Count VII adds nothing to this proceeding. If the

---

York General Obligations Law § 5-521, a corporation generally cannot assert usury as the basis for affirmative relief. Even criminal usury may be raised only as a defense to an action to recover repayment of a loan, not as the basis for an affirmative cause of action seeking to invalidate the agreement. *Paycation Travel, Inc. v. Global Merchant Cash, Inc.*, 192 A.D.3d 1040, 1040–41 (2d Dep't 2021). That rule applies to declaratory counterclaims seeking a determination that a merchant-cash-advance agreement is a usurious loan. Count V likewise seeks affirmative declaratory relief based on the allegation that the MSA is a usurious loan. It should be dismissed. Conterra's choice-of-law arguments do not require a different result.

Court determines that the Debtors sold the accounts, § 506 has no application and Count VII fails. If the Court determines that the accounts are estate property, the secured status of DLP's claim will be determined in the ordinary course, under the confirmed plan and the claims process. In neither event does Count VII present an independent controversy ripe for adjudication now. It should be dismissed as derivative and premature.

**7.2. Count VIII's value theory rests on no facts.**

A constructive fraudulent transfer claim under Bankruptcy Code § 548(a)(1)(B)(i) requires, among other elements, that the debtor "received less than a reasonably equivalent value in exchange for such transfer or obligation." "Value" includes property and the "satisfaction or securing of a present or antecedent debt of the debtor." Bankruptcy Code § 548(d)(2)(A). A pleading must set out facts making that element plausible; "(t)hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Conterra contends that Count VIII is not conclusory because it alleges the amounts that were exchanged in the purchase agreement. However, Count VIII pleads no facts plausibly supporting their position that the purchase price was not reasonably equivalent to the receivables purchased.

**7.3. Count IX falls with Count VIII.**

Count IX seeks to preserve and recover any avoided transfer under Bankruptcy Code §§ 550 and 551. Conterra agrees that Count IX depends on Count VIII. Bankruptcy Code §§ 550 and 551 create no independent cause of action; they provide remedies once a transfer is avoided. Because Count VIII fails, Count IX fails with it.

**8. Conclusion.**

For the foregoing reasons and those in the moving papers, DLP respectfully requests that the Court grant the Motion and dismiss Conterra's Amended Counterclaims.

Date: October 21, 2026

KAMINSKI LAW, PLLC

*/s/ Shanna M. Kaminski*

By: ______________________________
Shanna M. Kaminski
*Admitted pro hac vice*

Attorneys for Plaintiff & Counter-Defendant
DLP FUNDING LLC

-and-

SALVATO BOUFADEL LLP

*/s/ Joseph Boufadel*

By: ______________________________
Joseph Boufadel

Local Counsel for Plaintiff & Counter-Defendant
DLP FUNDING LLC