**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF CALIFORNIA**
**CIVIL MINUTES**

---

**Case Title:** Hronis, Inc.
**Adversary Title:** DLP Funding LLC v. Hronis, Inc. et al

**Case No.:** 26-10978 - B - 11
**Adv No.:** 26-01017

**Docket Control No.** SB-2
**Date:** 10/28/2026
**Time:** 11:00 AM

**Matter:** [56] - Motion/Application to Dismiss Defendants and Counter-Claimants Amended Counterclaims [SB-2] Filed by Plaintiff DLP Funding LLC, Counter-Defendant DLP Funding LLC (mpes)

**Judge: René Lastreto II**
**Courtroom Deputy: Elizabeth Roberts**
**Reporter: Electronic Record**
**Department: B**

---

**APPEARANCES for:**
**Movant(s):**
(by zoom) Plaintiff's Attorney - Joseph Boufadel;
(by zoom) Plaintiff's Attorney – Shanna Kaminski;
**Respondent(s):**
(by zoom) Creditor's Attorney - Mark Melickian;
(by zoom) Defendant's Attorney – Bernie Kornkerg;

---

**CIVIL MINUTES**

Motion Denied

DLP Funding, LLC ("DLP" or "Plaintiff"), plaintiff and counter-defendant in this adversary proceeding, moves for dismissal of the amended counterclaims of Defendants/Counter-Claimants Hronis, Inc. et al. (collectively "Defendants"). Doc. #56. This motion is brought pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), made applicable to the bankruptcy court by Fed. R. Bankr. P. 7012. Conterra Agricultural Capital, LLC ("Conterra"), as servicer for Ag Funding SC III LLC ("AG Funding") and transferee of Hronis's rights, responded, and DLP filed a reply. Docs. #62, #66.

Hearing in this matter will proceed, and DLP and Conterra may present further arguments. The court is inclined to DENY this motion for the reasons outlined below.

BACKGROUND

Except where noted otherwise, the facts are drawn from DLP's motion to dismiss and Conterra's response. Doc. #56, #62.

On October 29, 2024, some of the Hronis Debtors entered into a loan and security agreement with Conterra (the "Conterra Loan Agreement") for a revolving line of credit secured by a security interest in substantially all of those parties' personal property including accounts. Conterra perfected that interest on October 29, 2024.

On November 15, 2026, Defendants and several affiliates ("the DLP Borrowers") entered into a Merchant and Security Agreement ("MSA") with DLP. In accordance with the UCC and with New York law (which the MSA says governs the agreement), DLP automatically obtained a perfected attachment pursuant to UCC § 9-309. The MSA also contained an express grant of a security interest to DLP in all accounts receivable. DLP filed a UCC Financing Statement in California on November 25, 2025, which identified the transaction as "a sale" and its collateral as "accounts and proceeds." Conterra disputes that the MSA constituted a "sale" as opposed to a lien on the accounts receivable, though a finding that it was a sale is not an impediment to Conterra's arguments."

On December 22, 2025, DLP and Defendants executed a Stipulation of Settlement as to the New York Action which, inter alia, stipulated that Defendants sold accounts receivable to DLP under the MSA. Prior to the signing of the Stipulation, DLP served notices on various of the Defendants' customers ("the Payover Notices") advising those customers that DLP held a perfected security interest in the Defendants' assets and directing the customers to make payments to DLP rather than to Defendants, with the end result that approximately $9.8 million in accounts receivable was withheld.

Defendants subsequently breached the terms of the Stipulation of Settlement, and DLP exercised its rights under the Stipulation to obtain a judgment against Defendants in the New York Action in the amount of $5,035,160.16. The Judgment was filed in the King County New York Clerk's Office on January 6, 2026. See Doc. #7 (Exhibit 4).

The various Hronis debtors filed multiple Chapter 11 cases on or about March 6, 2026, and swiftly sought and received joint administration. DLP filed this adversary proceeding against the Hronis defendants on April 21, 2026, seeking a declaratory judgment that the accounts receivable being held pursuant to Payover Notices are not property of the estate and also seeking an award of $3,430,047.06 of the funds being held be awarded to DLP. Doc. #1.

Hronis filed its Answer on June 6, 2026, denying DLP's claims and asserting nine counterclaims against DLP. Doc. #18. On July 29, 2026, Hronis filed its Amended Answer, which is the operative Answer for this motion. Doc. #41. Defendants' counterclaims are as follows:

- Count I: Determination of the Validity, Priority and Extent of DLP's Alleged Liens, Claims, and Interests in the Pre-Petition Accounts as a Result of the Settlement Stipulation
- Count II: Determination of the Validity, Priority and Extent of DLP's Alleged Liens, Claims, and Interests in the Pre-Petition Accounts as a Result of the Judgment
- Count III: Determination of the Validity, Priority and Extent of DLP's Alleged Liens, Claims, and Interests in the Pre-Petition Accounts Pursuant to the MSA
- Count IV: Determination of the Validity, Priority and Extent of DLP's Alleged Liens, Claims, and Interests in the Pre-Petition Accounts Given That the MSA Represents a Disguised Loan and Not a Sale of Accounts Receivable or Future Receipts
- Count V: DLP Violated California Usury Law By Charging the Counterclaim Plaintiffs a Usurious Interest Rate Under the MSA
- Count VII: Determination of the Extent, Validity and Priority of DLP's Alleged Lien in the Pre-Petition Accounts and a Determination of the Unsecured Status and Voiding Lien Pursuant to 11 U.S.C. §§ 506(a), (d)
- Count VIII: Avoidance of Lien, Obligation and Purported Sales as Constructively Fraudulent Transfers Pursuant to 11 U.S.C. § 548(a).
- Count IX: Preservation and Recovery of Avoided Lien Pursuant to 11 U.S.C. §§ 550, 551.

Doc. #41 (Amended Answer and Counterclaim). The court notes that there is no Count VI in the Amended Answer and Counterclaim.

On September 30, 2026, DLP filed this Motion to Dismiss, asserting five arguments in support of dismissal of the counterclaims:

a. None of the requests for declaratory relief sought by Defendants in Counts I-V are viable as a matter of law because they are not relevant to any substantive cause of action asserted in the Amended Counterclaims.
b. As to Counts III through V, the counterclaims are "implausible" because "Defendants are barred from asserting that the Purchase Agreement is anything other than a sale of accounts pursuant to the release of claims in the Stipulation of Settlement and the doctrines of judicial estoppel and res judicata."
c. As to Count V, the Defendants are barred from obtaining affirmative relief (which includes declaratory relief) based upon usury under New York law.
d. As to Count VII, 11 U.S.C. § 506 does not apply to sales of accounts, Defendants are barred from asserting that the transaction is a loan, and the Court lacks subject matter jurisdiction because there is no case or controversy to be adjudicated since the value of DLP's collateral is known and

undisputed and lien priority has already been established in this case.

e. As to Counts VIII and IX (the latter of which DLP asserts to be dependent on the success the former), "Defendants cannot show that they suffered a concrete injury because they received a significant cash infusion but never performed their obligations under the terms of the transaction."

Doc. #56. Reframing those arguments in terms of Rule 12, DLP argues that Counterclaims I-V should be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted and that Counterclaims VII-IX should be dismissed under Rule 12(b)(1) for lack of jurisdiction.

Conterra filed a Response on October 14, 2026, and DLP filed a Reply on October 21, 2026. Docs. #62, #66.

## DISCUSSION

Rule 12(b)(6) governs motions to dismiss cases for failure to state a claim for which relief can be granted. Fed. R. Civ. P. 12(b)(6).

> In ruling on a Rule 12(b)(6) motion, a court "accept[s] as true all facts alleged in the complaint, and draw[s] all reasonable inferences in favor of the plaintiff." *al-Kidd v. Ashcroft*, 580 F.3d 949, 956 (9th Cir. 2009), *citing Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The court assesses whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *al-Kidd*, 580 F.3d at 949, *citing Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868, (2009), *in turn quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).

*McFarland v. GE Capital Corp. (In re Int'l Mfg. Grp.)*, 538 B.R. 22, 24 (Bankr. E.D. Cal. 2015).

Rule 12(b)(1), on the other hand, asks whether the court hearing a case has subject-matter jurisdiction over the case. Fed. R. Civ. P. 12(b)(1).

> In assessing a Rule 12(b)(1) motion, the complaint and the third-party complaint are to be construed broadly and liberally, but without drawing argumentative inferences. The factual allegations are construed favorably to the pleader and are accepted as true, unless denied or controverted by the movant. The burden of proof is on the party asserting jurisdiction.

*In re Eads*, 135 B.R. 387, 392 (Bankr. E.D. Cal. 1991)(citations omitted).

> The district courts of the United States have "original and exclusive jurisdiction of all cases under title 11." 28 U.S.C. § 1334(a). Congress has divided bankruptcy proceedings into three categories: those that "aris[e] under title 11"; those that "aris[e] in" a Title 11 case; and those that are "related to a case under title 11." § 157(a).

*Stern v. Marshall*, 564 U.S. 462, 473, 131 S. Ct. 2594, 2603 (2011).

28 U.S.C. § 157 authorizes the district court to refer to the bankruptcy court any or all cases or proceedings arising under or arising in or related to a bankruptcy case. This court's strongest jurisdictional reach is over matters designated as "core proceedings," a non-exclusive list of which may be found in 11 U.S.C. § 157(B)(2).

With those basic principles in mind, the court turns to DLP's arguments in favor of dismissal.

1. <u>None of the requests for declaratory relief sought by Defendants in Counts I-V are viable as a matter of law because they are not relevant to any substantive cause of action asserted in the Amended Counterclaims</u>.

DLP argues that Counts I-V are not viable claims because they all seek declaratory relief (although the Amended Counterclaims eschew that term), but "there is no substantive cause of action that has been alleged by Defendants in the Amended Counterclaims that requires any of the declaratory relief that is being sought by Defendants." Doc. #58 (DLP's Memorandum of Authorities).

Conterra disagrees. First, Conterra argues that the Amended Counterclaims are viable because they seek the converse of the relief sought by DLP's Complaint. Doc. #62 (Conterra's Response). Where the Complaint asks only for a declaration that the Withheld Funds are not property of the bankruptcy estate, Amended Counterclaims I-V ask (under different legal theories) for a declaration that they are property of the estate and that DLP has no ownership interest in them.

Conterra also notes that it was DLP who first argued in its response to Debtors' motion for stay enforcement that "an adversary proceeding is required to determine whether 'Pre-Petition Accounts' are property of the estate." Id. (quoting Doc. #206 (DLP's Opposition to Debtors' Motion for Entry of Order Enforcing the Automatic Stay and Awarding Sanction)). The court agrees with Conterra that sauce for the goose is good for the gander, and after bringing this adversary proceeding for the purpose of obtaining a declaration that the Withheld Funds are not estate assets, DLP cannot complain when Conterra brings Counterclaims for the purpose of obtaining a declaration to the contrary.

2. As to Counts III through V, the counterclaims are “implausible” because “Defendants are barred from asserting that the Purchase Agreement is anything other than a sale of accounts pursuant to the release of claims in the Stipulation of Settlement and the doctrines of judicial estoppel and res judicata.”

And

3. As to Count V, the Defendants are barred from obtaining affirmative relief (which includes declaratory relief) based upon usury under New York law.

Both of these arguments by DLP address whether Conterra can challenge the nature and legality of the MSA. Counterclaims III-V attack the MSA, arguing that it was not, as DLP purports, a sale of the accounts receivable, but rather a disguised loan, one which is junior to Conterra’s senior lien on the accounts receivable Doc. #62. Conterra also argues that, to the extent the MSA is a loan rather than a sale, it was usurious under California law. Id.

For purposes of a Rule 12(b)(6) motion, the court finds that there is sufficient ambiguity in the MSA to prevent the Counterclaims addressing it from being disposed of at this stage. The parties will have further opportunities to file dispositive motions after discovery.

DLP argues that Conterra is barred from asserting that the MSA was a loan rather than a sale due to res judicata and judicial estoppel. The court is unpersuaded. Both of those legal doctrines require findings by a court of competent jurisdiction which the party claiming issue or claim preclusion seeks to invoke in a different jurisdiction. Given the posture of the case, the court is not persuaded that DLP has shown, for purposes of a Rule 12(b)(6) motion, that the entry of a Stipulation to settle the New York Action satisfies the requirements of either doctrine.

4. As to Count VII, 11 U.S.C. § 506 does not apply to sales of accounts, Defendants are barred from asserting that the transaction is a loan, and the Court lacks subject matter jurisdiction because there is no case or controversy to be adjudicated because the value of DLP’s collateral is known and undisputed and lien priority has already been established in this case.

And

5. As to Counts VIII and IX (the latter of which DLP asserts to be dependent on the success the former), “Defendants cannot show that they suffered a concrete injury because they received a significant cash infusion but never performed their obligations under the terms of the transaction.”

Both of these arguments by DLP assert that the court lacks jurisdiction over the Counterclaims mentioned therein and so they must be dismissed. Again, the court is unpersuaded. As a threshold matter, Counts VII-IX are all premised on specific provisions of the Bankruptcy Code, respectively 11 U.S.C. § 506(a) and (d); § 548(a); and §§ 550 and 551. Obviously, these three counts arise both under and in title 11, which vests jurisdiction in this court.

Furthermore, as Conterra notes, the MSA, which is the root and heart of this adversary proceeding, cannot have had any preclusive effect on Counterclaims VII-IX because all of those claims did not come into existence until the bankruptcy case was filed.

CONCLUSION.

The court DENIED the motion. The court granted DLP Funding 21 days from date of entry of order denying motion to dismiss to file an answer to amended counter claim.